## NORRIS & COCHRAN v. HOWARD.

1. **Contract:** GOOD WILL: PARTNERSHIP. N. & C. purchased the grain elevator of H., with the good will pertaining thereto, and H. at the same time agreed not to engage in the grain business in. the same place; subsequently N. & H. and another formed a co-partnership for the prosecution of the same business for one year; *Held,* that the formation of partnership was inconsistent with the prior undertaking of H., and that, at the expiration of the partnership, he was absolved therefrom.

*Appeal from Jasper Circuit Court.*

TUESDAY, OCTOBER 26.

THE petition states that the plaintiffs, as the firm of Norris & Cochran, purchased of defendant the grain elevator at Prairie City, and in consideration thereof, and of his good will

in the grain business at said place, and of his agreement to go out of the grain and produce business at said place, they paid defendant down $1,000, and executed their notes for $1,800, secured by a chattel mortgage on the elevator.

That in a few days thereafter defendant became a silent partner with one James H. Elliot, and with him carried on a general grain and produce business in said place.

That afterward Norris & Cochran dissolved partnership, Norris becoming the owner of the elevator, and on the 1st of August, 1872, the plaintiff, Norris, James H. Elliot, and the defendant, formed a partnership for the purpose of engaging in a general grain business for one year, Charles M. Norris agreeing to furnish his warehouse and fixtures, James H. Elliot agreeing to furnish his warehouse and fixtures, and Horace M. Howard agreeing to furnish enough money to conduct the business, and also to give his personal service to it. That the partnership ceased at the end of the year, and the defendant Howard shortly afterward engaged in a general grain and produce business on his own responsibility, in opposition to plaintiff Norris, to his damage in the sum of $2,000, above the amount due on the note and mortgage. Judgment is asked for this amount, and that an injunction issue, removing the foreclosure proceeding to court.

The defendant answered, setting up the formation of the partnership between Norris, Elliott and defendant, and claiming that it released him from the sale of the good will.

The cause was tried by the court, who, upon the claim for damages for acts done since the dissolution of the partnership of Norris, Elliott and Howard, found for defendant. Plaintiffs appeal.

*J. W. Deweese* and *J. W. Wilson*, for appellants.

The intention of the parties should govern in the construction of written instruments, and in ascertaining this regard should be had to the nature of the instrument and the condition of the parties. (*Seymour & Co. v. Butler*, 8 Iowa, 304; *Enerick v. Clemens*, 26 Id., 332; *White v. Booker*, 4 Met. (Ky.), 267; *Montgomery v. Firemen's Ins. Co.*, 16 B. Mon.,

427.) Where the obligee releases one of a firm he releases all; but if he could not be reasonably supposed to have intended a release of all the partners, such an effect will not follow. (*Seymour & Co. v. Butler, supra*; 1 Pars. on Con., 23, 162; *Enerich v. Clemens, supra*.) The plaintiff would not be estopped by the dissolution of his co-partnership from claiming damages for defendant's breach of contract. An estoppel must be clearly proved. (*Baldwin v. Love*, 22 Iowa, 367.) It must be certain and precise. (*Lajoze v. Princan*, 3 Mo., 529.) Matters of estoppel in pais consist of acts whereby one *designedly* induces another to injuriously alter his position. (*Brown v. Wheeler*, 17 Conn., 345.) There must be deception and change of conduct in consequence to estop a party from showing the truth. (*Davidson v. Young*, 38 Ill., 145.) If an act or admission is susceptible of two constructions, one of them consistent with the right, it forms no estoppel. (*Ware v. Caules*, 24 Ala., 446.)

*S. G. Smith*, for appellee.

A transcript of the whole evidence or an agreed abstract is necessary before this court will review the case. (*Sanders & Co. v. Craig*, 21 Iowa, 580.) When a contract for the disposal of a good will in trade is made with a firm, the dissolution of the firm, whereby the business protected by the contract changes hands, will discharge the contract. (*Mussleman's Appeal*, 62 Pa., St. 83; Call on Partnership, 156; *Speer v. Lambdin*, 45 Ga., 319; *Kennedy v. Lee*, 3 Meriv, 441; *Elliott's Appeal*, 60 Pa., St. 161 and 183.) When a new contract is inconsistent with or renders the performance of a former one between the same parties impossible, the former is rescinded. (*Paul v. Meservy*, 58 Me., 421; *Wheeden v. Fiske*, 5 N. H., 125; *De Barmody v. Hardy*, 8 Exch., 822.)

DAY, J.—The court in rendering his decision made the following findings and conclusions:

"That said notes and mortgage to secure the same were given in consideration of the sale, by said Howard to plain-

tiff, of an elevator and fixtures, and the further consideration that said Howard would not afterward engage in the business at said place.

. That defendant did thereafter engage in such business from about the last of April, 1872, to the first of August, 1872, by being a silent partner of one Elliott, and furnishing him money with which to buy grain, and sharing in the profits thereof. And the court finds that by reason of his violation of his contract in this respect, the plaintiff has been damaged in the sum of two hundred dollars.

. That on the 1st day of August, the plaintiff, C. M. Norris, having purchased the interest of his partner, Wm. Cochran, in the concern, formed a co-partnership with the defendant, H. M. Howard, and one James H. Elliott, for the purpose of buying and dealing in grain and produce in Prairie City; and, by such arrangement the defendant, Howard, was released from his obligation not to again engage in the business of buying and selling grain in Prairie City."

The court thereupon allowed the plaintiffs a set-off of $200 against the said note and mortgage, and rendered judgment against them for the balance of the notes, and for a foreclosure of the mortgage. No objection is made to the facts found by the court, but it is claimed that the legal deductions are erroneous.

The agreement not to buy grain in Prairie City, nor thereafter to engage in such business at that place, is a thing distinct from the transfer of the mere good will. The legal meaning of good will, as defined by Lord Eldon, " is nothing more than the probability that the old customers will resort to the old place." "It is nothing more than a hope, grounded upon a probability." Parsons on Partnership, second edition, page 273. "The sale of a *good will*, in the absence of any express stipulation, does not preclude the seller from setting up the same kind of business in the same neighborhood; if he do not describe himself as setting up the identical business that has been purchased." Smith's Mercantile Law, page 252, and cases cited.

The agreement to take in defendant as a partner in the trans-

1. CONTRACT: good will: partnership.

acting of a general grain and produce business at Prairie City is altogether inconsistent with the undertaking which plaintiff had exacted of defendant not to engage in such business at that place. The formation of a partnership is regarded in law as mutually beneficial to all the parties. If one of the parties, in virtue of a contract with another, rests under any obligation which forms an impediment to his becoming a partner, his agreement to become such partner constitutes a sufficient consideration for releasing him from his agreement. If the article of co-partnership had expressly provided that, "in consideration of H. M. Howard's becoming a partner with C. M. Norris and James H. Elliott in a general grain and produce business at Prairie City, C. M. Norris releases H. M. Howard from his agreement not to engage in the grain and produce business at Prairie City," it could not be doubted that such discharge and release would be effectual and absolute. It would be a release supported by a sufficient consideration, and the expiration of the term of the co-partnership would not revive or restore an undertaking which had been finally abrogated by a valid agreement. Now when this co-partnership was formed, the objects of which could be carried out only by permitting Howard to engage in the grain and produce business, his agreement not to do so was just as fully and as effectually ended as if the articles of co-partnership had contained such a stipulation. It is true the parties might have agreed that the formation of the partnership should merely suspend Howard's undertaking, and enable him to engage in the interdicted business only during the continuation of the co-partnership. But as the contract of co-partnership contains no such provision, the discharge must be regarded as absolute, upon the sufficient consideration of his agreeing to become a member of the firm.

AFFIRMED.