WILLIAM N. SCUDDER

*v.*

WILLIAM KILFOIL.

[Filed June 8th, 1898.]

1. Where an injunction has been allowed to restrain violation of a contract not to engage in the same business as that *sold* in competition with the purchaser, and, by virtue of a subsequent contract between the same parties, it is claimed that such restraint of trade is waived, an application to vacate such injunction, not being designed to change the original decree, may be presented by petition rather than by bill of review.

2. One who purchases the good will of a business with a contract by the seller not to re-enter the same business in competition with the buyer in the same place, does not, by subsequently entering into a general copartnership with the seller, inferentially waive such contractual restraint; nor does a dissolution of the partnership invest the seller with the right to re-enter business as a competitor, as an incident to his moiety in the good will of the firm.

On motion to dismiss a petition.

*Mr. Aaron V. Dawes,* for the motion.

*Mr. Linton Satterthwait,* for the petitioner.

REED, V. C.

The petition is filed to vacate a writ of injunction. The petition sets out that on June 20th, 1894, the petitioner, the defendant in this cause, and William N. Scudder, the complainant therein, entered into a contract, by the terms of which Kil-

foil agreed not to engage in the same business (butcher and dealer in meats, game and poultry) in Princeton, Mercer county, New Jersey, so long as Mr. Scudder should carry on the same business in Princeton. On September 5th, 1895, Mr. Scudder filed a bill in this court for an injunction against Kilfoil, in which suit a decree was entered on October 29th, 1895, restraining Kilfoil, his servants and agents, from carrying on the business of butcher and dealer in meats, game and poultry, either directly or indirectly, within the borough of Princeton, so long as Scudder should continue in said business, and from soliciting orders for meats, game or poultry, and from supplying the citizens of Princeton with meats, game or poultry, &c.

The petition then sets out that in August, 1896, the parties entered into copartnership, for the carrying on of the business of buying and selling meats, and the general butcher business, in Princeton, each contributing fixtures and cash to said partnership; that they continued the joint butcher business in said borough (which business had been sold by the petitioner to said Scudder at the time of making the said contract and had been continued by said Scudder until they entered into the contract of copartnership) until October 30th, 1896, when the petitioner sold his interest in said copartnership to Scudder, without restriction or condition as to the good will of said business, or as to the right of the petitioner to engage again in business in said borough of Princeton.

The claim of petitioner is that by the agreement of partnership, Scudder abandoned all claims and right to enforce the first contract, and therefore the injunction which restrained the petitioner should be vacated.

It is perceived that the petition sets up a matter occurring since the original decree as a reason for vacating the decree or restraining the writ of injunction.

I had some doubt whether this matter could be called to the attention of the court except by a bill in the nature of a bill of review, but am inclined to think that it may be presented by petition. It is not an application to change the decree originally entered, but is analogous to an application to stay process

issued to enforce a decree or judgment where a judgment has been paid or performance of a decree has been waived, or any other ground has arisen by which the enforcement of. it would be inequitable and oppressive.

In the case of *Spann* v. *Spann, 2 Hill Ch. (S. C.) 152,* upon a motion to set aside an attachment issued to enforce a decree, which motion the chancellor had granted, the judge who wrote the opinion for the court of appeals, said : " It is clear that the courts, both at law and equity, have the power and duly exercise it of suspending the execution of even final process, on account of subsequent matter, which would render the execution of it oppressive or inequitable."

I will therefore express my views of the rights of the parties under the facts set forth in the petition.

The contention of counsel for the petitioner is that subsequent to the making of the decree, the complainant, by taking the defendant into partnership, and so permitting him to carry on the enjoined business, abandoned his right under the original agreement. It is not stated that the complainant, upon entering into the partnership relation with the petitioner, expressly agreed that the former covenant should be rescinded. Nor at the termination of their relation was there any agreement to that effect. The waiver or abandonment of the previous agreement, it is insisted, arose from the fact that they entered into a partnership to transact the same kind of business, and then dissolved their partnership relation.

The line of reasoning by which this result is put forward is that the covenant by which the petitioner bound himself not to transact business in Princeton, was equivalent to a sale to complainant of the good will of the business, which petitioner then sold to complainant ; that when they entered into partnership this good will became a part of the property or assets of the firm in which the petitioner acquired an equal interest'; that upon dissolution of the firm, a moiety of this interest remained his property, and entitles him personally to engage in the same business.

It seems to me that this line of argumentation is defective.

Scudder *v.* Kilfoil.

The negative covenant entered into by the petitioner, by which he bound himself not to engage in the same business within the borough, was of much more consequence than a mere sale of the good will of the business to Mr. Scudder. The sale of the good will would have only precluded the vendor from soliciting trade from the old customers of the firm, but would not have prevented him from setting up a rival business in Princeton or anywhere else. *Labuchere* v. *Dawson, L. R. 13 Eq. 322 ; Newark Coal Co.* v. *Spangler, 9 Dick. Ch. Rep. 354; Althen* v. *Vreeland, 36 Atl. Rep. 479.*

By virtue of the contract, Scudder therefore got much more than the "good will," namely, the right to prevent Kilfoil from soliciting the old customers of the business ; he got a right to exclude Kilfoil from doing any business at all in the same line in the same place. If Scudder had entered into partnership with a third person, no right to enforce Kilfoil's covenant would have passed to the partnership, but would have remained the sole right of Scudder, the covenantee. So, when Kilfoil became a partner, he obtained no interest in the covenant as such partner, which could annul his obligation as covenantor. The question, then, is reduced to this, did the consent by Scudder, that Kilfoil should engage in the same business in Princeton, as his partner, imply a waiver of his rights under the contract? I am clear that it did not. The two contracts were not incongruous or inconsistent. The covenant in the original contract provided against Kilfoil entering upon the same business in rivalry with Scudder. The permission implied by the partnership arrangement was that he might engage in the same business in copartnership with Scudder. If Scudder had hired Kilfoil to assist him in his business, I do not see how this could be tortured into a consent that the latter could work for himself. Now, their relation as partners, both interested in the business of the firm, made the consent of Scudder that Kilfoil should so work as partner of much the same quality as would have been his assumed consent that Kilfoil should work as his servant. His consent in the latter case would have been that he could work for Scudder ; in the former, that he could work in the interest

of Scudder. To this extent only was there a consent that Kilfoil should engage in business while Scudder was still in business. When Kilfoil ceased to be a partner, and even that consent was withdrawn by the cessation of the firm relationship, he had acquired no right to engage in business on his own account, in contravention of the terms of his original contract.