## Menefee v. Rankins.

(Decided March 18, 1914.)

### Appeal from Boone Circuit Court.

1. Contracts—When Abrogated By Subsequent Contract Between Same Parties.—A written contract, complete in itself, will be conclusively presumed to supersede a former contract made prior thereto between the same parties, in relation to the same subject matter.

2. Contracts—Inconsistent Provisions—Effect of.—If agreements be made between the same parties concerning the same subject matter, and the terms of the latter contract are so inconsistent with those of the former contract that they cannot subsist together, the contract last made will be construed to discharge or supersede the one first made.

3. Contracts—Sale of Business and Good Will—Effect of Subsequent Co-Partnership Between the Parties To Conduct the Same Business.—Where a physician sold to another his property, practice and good will, and obligated himself in the contract of sale not to again engage in the practice of medicine at the same place so long as the purchaser might there continue to practice medicine, a contract of co-partnership subsequently made between the seller and purchaser to practice medicine together at such place, released the former from his promise made in the first contract not to practice medicine thereat. And this was so, whether the co-partnership continued for the full term fixed by the contract of co-partnership, or was sooner dissolved; and the dissolution of the partnership left the seller of the practice and good will under the first contract free to practice medicine at the same place on his own account.

HARVEY MYERS, TOMLIN & VEST and B. F. MENEFEE for appellant.

CLORE, DICKERSON & CLAYTON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, a physician, after successfully practicing his profession in and around Walton, Boone County, Kentucky, for about eight years, concluded to seek a change of location. At this time he was enjoying a practice from which he was realizing about $3,600.00 per annum. Appellee, also a physician, after practicing his profession for several years at Sardis, Mason County, Kentucky, made up his mind to seek another field for a location. June 26, 1911, he met appellant in the Emery Hotel, Cincinnati, and they were introduced by a mutual

friend, who said to appellant that appellee was a physician seeking a new location. Whereupon appellant informed appellee that he was thinking of removing from Walton, described to him the town and offered to sell to him his practice and certain office equipment and other property, which he owned at that place. On the following day appellee went from Cincinnati to Walton, looked over the field and got from appellant a price on his practice, property and good will. Appellee left Walton, however, without making a trade with appellant, but on July 5th returned with Dr. Adamson, his friend and former partner, and both spent the day at Walton investigating the situation, the property and practice of appellant, and after expressing their satisfaction they went with appellant to Cincinnati that night, where a preliminary contract was drawn and signed, at which time appellee paid appellant $100.00 as earnest money. July 27 appellee returned to Walton, and on August 7, 1911, the writing evidencing the contract between them was written and duly signed by the parties. The appellant immediately took possession of the property purchased by him of appellee and began the practice of his profession.

The full consideration paid to appellant by appellee was $2,250.00 and the property sold by the former to the latter consisted of two vacant lots in Walton, various articles of personal property in the way of office equipment, and appellant's good will; the lots and personal property being valued at $1,750.00 and the good will at $500.00. The clause of the contract pertaining to the controversy that thereafter arose between the parties is as follows:

''As a further part of this contract and a part of the consideration hereof, the said Dr. B. K. Menefee agrees to remain in and about the town of Walton until October 1st, 1911, and in every legitimate and proper way in so far as the ethics of the profession permit and assist the said Dr. G. C. Rankins in the practice of medicine, it being the intention of both parties to this contract that the said B. K. Menefee includes in this deal his good will in the practice of medicine in the town of Walton and vicinity. In order to more effectually carry out this intention the said Dr. B. K. Menefee agrees to remove from the town of Walton on October 1st, 1911, and to locate at some point more than fifteen (15) miles from said town of Walton, and not to locate again in said town of Walton

so long as the said Dr. G. C. Rankins remains in the active practice of medicine at said point. In so far as he is able to do so, the said Menefee agrees to turn over to the said Dr. G. C. Rankins, all his practice at said point, and to in every way promote the best interests of the said Rankins.''

Upon the execution of the contract appellant at once undertook and in good faith proceeded to carry out the obligation therein assumed by him to assist appellee in the practice of medicine, by introducing and recommending him to his patrons, visiting the sick among them with him, and doing all in his power to turn over to him the practice which he (appellant) had theretofore enjoyed in and about Walton. But shortly thereafter appellee, having been informed that another physician was thinking of locating at Walton, proposed to appellant that he enter with him into a co-partnership for the joint practice of their profession, to which appellant agreed, and thereupon a writing was drawn and signed by them, containing the terms of this partnership; which writing bears date August 10, 1911, and reads as follows:

''Know all men by these presents that Dr. B. K. Menefee and Dr. G. C. Rankins have this day entered into the following contract, viz.: The said Dr. B. K. Menefee and the said Dr. G. C. Rankins have formed a partnership for the practice of medicine at Walton, Ky. The terms of the partnership are as follows: Each party to this contract is to be attentive to business and answer each and every call as quickly as possible, further, each party is to bear one-half of the expenses of the practice, with the exception of the conveyances, and horses, and that each party of this contract shall share equally in the profits and losses of the business.

''That the said G. C. Rankins of the firm of Menefee and Rankins retain the stationary fixtures in the office as his individual property, namely: One gasoline engine, one dynamo, one static machine, one victor vibrator, one typewriter and desk, all electric apparatus for lighting office, one compressed air tank and fixtures, one galvano-farradic battery, one operating table, one dressing table, one bedside table, one Cary safe.

''All instruments in the office are the property of Dr. B. K. Menefee. All drugs purchased since July 29th, 1910 are to be paid for out of the proceeds of the business. One roll top desk and one bookcase are the sole

property of Dr. B. K. Menefee. This partnership to continue for three years from date and then indefinitely so long as it is mutually agreeable to both parties. It is also agreed by both parties that monthly settlements shall be made. In the event that either party should decide to locate elsewhere during the term of this partnership the business relations which now exist between said parties pertaining to their partnership shall be surrendered in favor of the party remaining in the business at Walton, Ky.

"This contract has been made and entered into since the contract of August 7, 1911.

"In witness whereof the parties hereunto have this day set their hands August 10, 1911."

Signed,

B. K. MENEFEE,
G. C. RANKINS."

The partnership thus entered into by the parties continued from August 10, 1911, to April 30, 1912, or about eight and a half months, when it was dissolved by mutual consent and notice of the dissolution, signed by them, published in a newspaper. Following the dissolution of the partnership appellant remained in the town of Walton and continued the practice of his profession, which brought him in competition with appellee, and the latter, claiming to be damaged thereby, brought this action in the court below, alleging in the petition that in thus remaining in Walton and continuing to practice therein and the contiguous territory after the dissolution of the partnership, appellant violated the contract of August 7, 1911, which, it was claimed, prohibited him from practicing medicine in such town and territory so long as appellee continued to live at Walton and practice medicine in the same territory. Judgment was prayed by the latter against appellant for $3,000.00 damages and an injunction asked to permanently restrain him from the practice of medicine at and within fifteen miles of the town of Walton.

The answer of appellant admitted the execution of the two contracts mentioned, but alleged that by the last one, the contract of co-partnership, it was the intention of the parties to set aside the first contract, which it in fact and meaning did; that in considering and accepting appellee's proposition to form the co-partnership appellant, by reason thereof, contracted for and did purchase

valuable property as and for a dwelling house for himself and family, for which he paid $3,000.00, and then declared to appellee his purpose of making Walton his permanent home at which to practice his  profession; and that but for such co-partnership and the right it gave him to make Walton his future and permanent home, both as a residence and a place to practice his profession appellant would not have purchased the real estate mentioned.  It was further denied in the answer that appellant, when or after the partnership was dissolved, expressed to appellee a willingness or purpose to carry out or perform the obligations, or any of them, specified in the first contract made between them; or that he at any time consented to restore the first contract or any provision thereof; denied that appellee had been damaged $3,000.00 or any other sum by appellant's continuing to practice his profession in and around Walton after the dissolution of the partnership between them.

By the judgment rendered the circuit court held that the two contracts entered into between the parties were not repugnant or inconsistent and that the dissolution of the partnership left the first contract in full force and effect, therefore appellant was perpetually enjoined from practicing medicine at or within fifteen miles of Walton so long as appellee might live at Walton and continue to practice medicine thereat and within fifteen miles thereof; and from that judgment this appeal is prosecuted.

It is insisted for appellant that the two contracts here involved are inconsistent and as they cannot be reconciled the first was abrogated by the last.  The rule with respect to the effect upon an agreement by an inconsistent subsequent agreement between the same parties in regard to the same subject matter is thus stated in 9 Cyc., 595.

"One written contract complete in itself will be conclusively presumed to supersede another one made prior thereto in relation to the same subject-matter.  If agreements be made between the same parties concerning the same matter, and the terms of the latter are inconsistent with those of the former so that they cannot subsist together, the latter will be construed to discharge the former.  But where it is claimed that by reason of inconsistency between the terms of a  new agreement and those of the old the old one is discharged, the fact that

such was the intention of the parties must clearly appear. A new contract with reference to the subject-matter of a former one does not supersede the former and destroy its obligations, except in so far as the new one is inconsistent therewith, when it is evident from an inspection of the contracts and from an examination of the circumstances that the parties did not intend the new contract to supersede the old, but intended it as supplementary thereto. Where a new contract is consistent with the continuance of the former one, and only provides a new mode of discharging the same, it has no effect unless or until it is performed.''

In our opinion the contract of partnership, being complete in itself as to the business and professional relations of the parties to each other from its date, and wholly inconsistent with the first contract, must be held to have abrogated or superseded it. There is no disagreement between the parties as to the following facts; first, that between the date of the first contract and that of the last there was no violation by appellant of the terms of the first contract. On the contrary it is admitted that he complied with every obligation it imposed. He remained at Walton without attempting to practice his profession; accompanied appellee to see his old patrons; introduced and recommended him to them, and did all that was in his power to assist appellee in establishing himself in the practice which the first contract bound appellant to abandon. In addition, appellant was admittedly preparing to move from the territory in which he had bound himself to quit practice and locate elsewhere for the practice of medicine when requested by appellee to enter with him into the partnership for the joint practice of their profession, as stipulated in the second contract, and there is no contrariety of evidence as to the fact that it was not at appellant's suggestion, but wholly at appellee's request, that the partnership was entered into. There is, therefore, no ground for saying that appellant, in entering into the second contract, did so to obtain a pretext for evading the first contract. Indeed, the petition charges no fraud upon the part of appellant in connection with the execution of either contract; and while it is complained that he caused the dissolution of the partnership, it is alleged that he acted arbitrarily, not fraudulently, in so doing. On the other hand, it is appellant's contention, in some measure sustained by proof,

that he did not arbitrarily dissolve the partnership but that its dissolution resulted from mutual consent of the partners. It is significant that the second contract contains no stipulation regarding the revival of the first contract upon the dissolution of the partnership; nor does it require of appellant compliance with any obligation imposed by the first contract in such event. On the contrary, the first contract compelled appellant not only to quit the practice of medicine at Walton and vicinity, but, if he continued in the practice of that profession to remove from Walton to some place at a distance not less than fifteen miles therefrom; whereas, the second contract required him to remain at Walton and practice medicine for the joint benefit of himself and appellee there and in the contiguous surrounding territory, at least, during the term fixed for the continuance of the partnership, without annexing any condition as to his not practicing at Walton and vicinity in the event of the dissolution of the partnership, whether occurring at the end of the three years or earlier.

If the partnership had continued the full three years, as contemplated by the last contract, could it reasonably be contended that at the end of that time appellant would have had to comply with the terms of the first contract by removing from Walton to continue the practice of his profession elsewhere? The question answers itself. If he could not at the end of the three years be compelled to comply with the terms of the first contract, as indicated, it is equally clear that an earlier dissolution of the partnership, whether brought about by mutual consent of the partners or the wrongful act of one of them, could have no different effect. And if, as argued by counsel for appellee, the partnership was arbitrarily and without legal cause dissolved by appellant, that fact would not of itself revive any obligation imposed upon him by the first contract, if it was in fact abrogated by the second contract, but could only give appellee a right of action against appellant for the recovery of such damages as he may have sustained for the breach of the partnership contract committed by him. Therefore, his remedy, if any he had, was an action at law for the breach of the partnership contract, instead of an action in equity to enforce the performance of the first contract.

It is not to be overlooked that the partnership between appellant and appellee was not of the former's

seeking. It was conceived and proposed by appellee, who had it in his power to insist that the contract of co-partnership contain a provision compelling appellant, as provided by the first contract, to remove from and quit practicing medicine at Walton at the termination of the partnership, whether terminated at the end of the three years or earlier, and if appellant had refused to consent to such a condition he would still have been bound to surrender his practice at Walton to appellee as required by the first contract; but the contract of co-partnership contains no such condition, or any other indicating a purpose to keep alive any provision of the first contract. The two contracts are utterly inconsistent, and this being true the conclusion is unavoidable that the last abrogated the first.

As, by his voluntary act in effecting the partnership with appellant as expressed in the contract between them, appellee deprived himself of the benefits to which he would have been entitled under the first contract, had he practiced his profession alone, he cannot complain of the loss resulting to him from his deprivation thereof. Such loss, however, is not as great as claimed by appellee, for according to the evidence, though appellant yet remains in Walton to divide the practice with him, appellee gets the larger share of it and he yet has the property which he acquired of appellant under the first contract made with him. It is true he claims that he would not have paid what he did for the property he purchased of appellant, or have purchased it at all, but for his having to do so to obtain his practice at Walton. He does not claim, however, nor does the evidence show, that the property, either real or personal, is worth any less than he paid for it; and if his acquisition of appellant's practice at Walton was the principal inducement for appellee's purchase of his property there, it is equally true that the partnership he persuaded appellant to form with him was the inducement for the latter's purchase of the $3,000.00 residence at Walton after the matter of the partnership was agreed on by the parties. So it is apparent that the equities urged by appellee for the relief sought by him are no stronger than those existing in appellant's favor against the granting of such relief. It is not perceived, however, that any matter of equitable relief can be regarded as pertinent to the question here presented for decision, which is simply this: Was the contract of August 7, 1911 between appellee and appel-

lant abrogated by that of the co-partnership evidenced
by the writing of August 10, 1911. While it is true that
the intention of the parties should govern in the construc-
tion of written instruments, and in ascertaining this,
regard should be had to the nature of the instrument and
to the condition of the parties, it is no less true, as pre-
viously stated, that when a new contract between the
same parties with reference to the same subject-matter
is so inconsistent with or repugnant to the former con-
tract as to render its performance impossible, the former
contract must be treated as rescinded or abrogated by
the latter. Applying the foregoing rule to this case we
think it evident from an inspection of the contracts and
a consideration of the circumstances attending the exe-
cution of the two instruments, that it was the intention
of the parties to both of them that the first contract
should be abrogated by the last, and that this was done.

We are not advised that this question, as here pre-
sented, has been decided in this jurisdiction. It has, how-
ever, been passed on elsewhere, and a case in point is that
of Norris & Cochran v. Howard, decided by the Supreme
Court of Iowa, the opinion being reported in 41 Iowa
508. The facts were that Norris & Cochran purchased
a grain elevator of Howard with the good will pertain-
ing thereto, and Howard at the same time agreed not to
engage in the grain business in the same place; subse-
quently, however, Norris and Howard and another
formed a co-partnership for the prosecution of the same
business in the same place for one year. It was held by
the court that, as the formation of the partnership be-
tween Norris and Howard was inconsistent with the
prior undertaking of Howard not to engage in the grain
business in the same place, at the expiration of the part-
nership he was absolved from such prior undertaking,
nor did the fact that one Elliott was taken into the part-
nership with Norris and Howard affect the result. In the
opinion it is said:

"The agreement to take in defendant as a partner
in the transacting of a general grain and produce busi-
ness at Prairie City is altogether inconsistent with the
undertaking which plaintiff had exacted of defendant
not to engage in such business at that place. The forma-
tion of a partnership is regarded in law as mutually
beneficial to all the parties. If one of the parties, in vir-
tue of a contract with another, rests under any obliga-

tion which forms an impediment to his becoming a partner, his agreement to become such partner constitutes a sufficient consideration for releasing him from his agreement. If the article of co-partnership had expressly provided that, 'in consideration of H. M. Howard's becoming a partner with C. M. Norris and James H. Elliott in a general grain and produce business at Prairie City, C. M. Norris releases H. M. Howard from his agreement not to engage in the grain and produce business at Prairie City,' it could not be doubted that such discharge and release would be effectual and absolute. It would be a release supported by a sufficient consideration, and the expiration of the term of the co-partnership would not revive or restore an undertaking which had been finally abrogated by a valid agreement. Now when this co-partnership was formed, the objects of which could be carried out only by permitting Howard to engage in the grain and produce business, his agreement not to do so was just as fully and as effectually ended as if the articles of co-partnership had contained such a stipulation. It is true the parties might have agreed that the formation of the partnership should merely suspend Howard's undertaking, and enable him to engage in the interdicted business only during the continuation of the co-partnership. But as the contract of co-partnership contains no such provision, the discharge must be regarded as absolute, upon the sufficient consideration of his agreeing to become a member of the firm."

We think it manifest that when the co-partnership was formed between appellant and appellee they could not have failed to understand that it could be carried out only by permitting appellant to engage in the practice of medicine at and around Walton; therefore, the provisions of the contract of co-partnership which required appellant to remain in Walton and there practice medicine necessarily ended and discharged his agreement contained in the first contract not to practice medicine at or near Walton, as effectually and absolutely as if the contract of co-partnership had contained a stipulation to that effect; and the prior agreement being thus abrogated by the contract of co-partnership could not be and was not revived by the dissolution of the partnership. In other words, appellant's agreement to become appellee's partner in the joint practice of medicine at and around Walton being an arrangement mutually beneficial

to the partners, constituted a sufficient consideration for releasing appellant from his prior agreement not to practice medicine there.

For the reasons indicated the judgment is reversed and cause remanded with directions to the lower court to dismiss appellee's petition. Whole court sitting.