SCHLUTER v. McLEOD. (No. 1256.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 28, 1917. Rehearing Denied Dec. 19, 1917.)

1. DAMAGES ⟐89(1)—EXEMPLARY DAMAGES—RIGHT TO RECOVER.

In an action for breach of a restrictive covenant requiring a seller of the insurance business not to re-engage in such business, exemplary damages cannot be recovered.

2. APPEAL AND ERROR ⟐781(1) — JURISDICTION—MOOT CASE.

Plaintiff sought an injunction restraining defendant from violating a contract not to re-

engage in insurance business in the county after sale of his interest to plaintiff, as well as $500 actual damages. Recovery was denied, and plaintiff appealed, having failed to except to an order sustaining a special exception to his claim for exemplary damages. Pending the appeal, plaintiff sold his business. *Held*, that as the jurisdiction of the appellate court is fixed by the status of the case at the time of the filing of the appeal bond, and as plaintiff at that time claimed an injunction as well as actual damages and his right to damages was not lost by reason of his conveyance of the business, the appeal cannot be dismissed on the theory that, having conveyed the business, the amount involved was less than the jurisdictional amount for the district court from whence the appeal was had, for the question of damages remained for decision.

3. GOOD WILL ⬤⟶6(4) — COVENANTS — CONSTRUCTION.

Plaintiff and defendant, who had been engaged as partners in writing insurance, re-engaged as partners in the business of writing hail insurance after defendant had sold to plaintiff his interest in the business, and entered into a covenant not to directly or indirectly enter into or engage in the business of writing fire, tornado, plate glass, burglary, or hail insurance in the county so long as plaintiff should remain in business therein. *Held* that, as the agreement by defendant not to re-engage in the insurance business gave plaintiff something more than the good will of the business, the fact that the parties re-entered into partnership did not after dissolution of the second partnership authorize defendant to enter into competition with plaintiff contrary to the terms of his agreement.

4. EVIDENCE ⬤⟶461(4) — PAROL EVIDENCE RULE—ADMISSIBILITY.

Where defendant entered into a written agreement, on the sale of his interest in an insurance business, not to engage in the business of writing fire, tornado, plate glass, burglary, or hail insurance in the county as long as plaintiff should remain in business, testimony of defendant that he did not sell the good will of the business is inadmissible, being in contradiction of the terms of the contract.

Appeal from District Court, Childress County; J. A. Nabers, Judge.

Action by H. A. Schluter against W. A. McLeod. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Jno. W. Davidson, of Childress, and Veale & Lumpkin, of Amarillo, for appellant. Fires & Diggs, of Childress, for appellee.

HALL, J. Appellant filed this suit to restrain appellee from engaging in the business of writing and soliciting hail insurance in Childress county, and to recover actual and exemplary damages. He alleges, in substance, that with appellee, on January 1, 1916, under the firm name of McLeod & Schluter, they were engaged in writing insurance in Childress county, Tex.; that such business consisted of writing policies for various forms of insurance, and was on said date of the value of $3,000; that the value of the good will of appellee in and to the business was $1,000; that on said date appellant purchased appellee's interest in the partnership business, paying him therefor the sum of $1,500, at which time appellee entered into a written contract with appellant, by the terms of which appellee obligated and bound himself that he would not directly or indirectly enter into or engage in the business of writing fire, tornado, plate glass, burglary, or hail insurance in the city of Childress, or in Childress county, Tex., so long as appellant should remain in said business in Childress county; that appellant had been continuously engaged in said business since he purchased the interest of appellee, and, notwithstanding his contract and obligation to engage in the insurance business in said county, appellee did, on the 15th day of April, 1917, write hail insurance in said county and held himself out as an insurance agent, soliciting hail insurance to be written by him; that he will continue to do so unless restrained by the court, to the damage and injury of appellant; that the act of appellee in writing hail insurance in Childress county is a violation of his contract and agreement with appellant and has caused the business of appellant and the value thereof to decrease in the sum of $500; that, if appellee is permitted to continue to write said insurance in said territory in violation of his contract, it will work great and irreparable damages to appellant.

Appellant attached to his petition the contract of January 1, 1916, paragraph 2 of which is as follows:

"That for and in consideration of said sale and purchase and of the said sum of money aforesaid, the said W. A. McLeod does hereby bind and obligate himself that he will not directly or indirectly, enter into nor engage in the business of writing fire, tornado, plate glass, burglary and hail insurance nor the writing of indemnity or other insurance other than life insurance in the city of Childress and in the county of Childress, Texas; and for the faithful performance of this obligation the said W. A. McLeod does hereby bind himself firmly and by these presents. This contract shall remain in force as long as the said H. A. Schluter remains in said above stated insurance business."

The answer of appellee, in addition to exceptions and general denial, alleged that the agreement and contract made by and between him and appellant was abrogated, annulled, and dissolved by reason of the fact that appellant and appellee at said time again entered into a partnership, by the terms of which they were to engage in the business of writing hail insurance in Childress county, Tex., and divided the proceeds equally after paying the expense of said business, and that such partnership existed during the remainder of the season of the year 1916; that appellee and appellant did divide the earnings and profits of said partnership equally; and that by reason of said subsequent contract of partnership appellee was relieved from the obligations and conditions of his said contract of January 1, 1916. Appellee further alleged by way of cross-action that the injunction was unlawfully and unjustly obtained, and that by reason thereof he suffered damages for which he prayed

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

judgment. By supplemental petition appellant answered specially that he did not enter into a contract of partnership with appellee, but, on the contrary, he employed appellee to solicit and write hail insurance for him, and that the relation of employer and employé existed between them, and that they were not partners. Upon a trial of the case without a jury, judgment was entered dissolving the temporary injunction and decreeing that appellant take nothing by his suit and that appellee take nothing by reason of his cross-action.

[1, 2] Appellee has filed a motion to dismiss the case upon the ground, as shown by affidavit attached to the motion, that appellant has sold to one Biggs the insurance business purchased by him of appellee since the appeal was perfected. As heretofore stated, the suit was for an injunction and to recover $1,000 exemplary damages and $500 actual damages. The court correctly sustained a special exception to the claim for exemplary damages, and appellant did not except to such ruling. It is insisted in the motion that since the claim for $1,000 is not an issue, and since the sale of the business by the appellant has the effect of removing the issue of his right to an injunction from the case, the only question now before this court is the item of $500 damages, and, because the district court would have no jurisdiction of a suit for $500, this court should dismiss the case. The general rule is that the jurisdiction of this court is fixed by the status of the case at the time the appellant files his appeal bond. At that time appellant claimed the right to an injunction as well as the right to recover actual damages, which would give this court jurisdiction of the controversy. It is therefore our duty to entertain jurisdiction, unless by reason of something occurring since the appeal there is no longer any controverted issue, or the subject-matter of the suit has been destroyed, or the questions presented are moot. Hart v. Britton, 197 S. W. 592, and authorities cited.

[3] It appears from the judgment of the court that the trial judge dissolved the temporary injunction and rendered judgment against the appellant upon the ground that the written contract of January 1, 1916, was abrogated and annulled as to hail insurance, by the "new contract entered into between plaintiff and defendant for jointly pursuing said business of hail insurance." A review of this ruling and the authorities bearing upon it has convinced us that the court erred. The question has never been adjudicated in this state, but we believe that the weight of authority and the better reason sustains the contention of appellant that the original contract was not abrogated, either by a subsequent partnership agreement between appellant and appellee, or by the creation of the relation of employer and employé between them. The only cases where the question has been considered, so far as we have been able to find, are cited in the briefs of the parties. The first case is that of Norris & Cochran v. Howard, 41 Iowa, 508, in which it was held that the formation of a partnership under such circumstances was inconsistent with the prior contract binding one of the parties not to engage in the same business, and at the expiration of the partnership the party bound by the contract was absolved therefrom. In the case of Menefee v. Rankins, 158 Ky. 78, 164 S. W. 365, the Court of Appeals of Kentucky considered the same question arising in a case growing out of a contract where one physician had sold his office furniture and good will to another, agreeing in the contract to leave town and to turn over, so far as he was able, all of his practice to the purchaser. The question is discussed at some length, and the opinion of the court is based upon the Norris & Cochran v. Howard Case, supra, which it cites with approval. We are not disposed to follow the holding in these cases. The Chancery Court of New Jersey, in a carefully considered opinion in the case of Scudder v. Kilfoil, 57 N. J. Eq. 171, 40 Atl. 602, arrives at a contrary conclusion. In that case, as in this, it was insisted that the waiver or abandonment of the previous contract arose from the fact that the contracting parties subsequently entered into a partnership to transact the identical business which was the subject of their prior agreement, and then dissolved their partnership relation. The court said:

"The negative covenant entered into by the petitioner, by which he bound himself not to engage in the same business within the borough, was of much more consequence than a mere sale of the good will of the business to Mr. Scudder. The sale of the good will would have only precluded the vendor from soliciting trade from the old customers of the firm, but would not have prevented him from setting up a rival business in Princeton, or anywhere else. * * * By virtue of the contract, Scudder therefore got much more than the 'good will,' namely, the right to prevent Kilfoil from soliciting the old customers of the business. He got a right to exclude Kilfoil from doing any business at all in the same line in the same place. If Scudder had entered into partnership with a third person, no right to enforce Kilfoil's covenant would have passed to the partnership, but would have remained the sole right of Scudder, the covenantee. So, when Kilfoil became a partner, he obtained no interest in the covenant as such partner, which could annul his obligation as covenantor. The question then is reduced to this: Did the consent by Scudder that Kilfoil should engage in the same business in Princeton as his partner imply a waiver of his rights under the contract? I am clear that it did not. The two contracts were not incongruous or inconsistent. The covenant in the original contract provided against Kilfoil entering upon the same business in rivalry with Scudder. The permission implied by the partnership arangement was that he might engage in the same business in copartnership with Scudder. If Scudder had hired Kilfoil to assist him in his business, I don't see how this could be tortured into a consent that the latter could work for himself. Now, their relation as partners, both interested in the business of the firm, made the consent of Scudder that Kilfoil

should so work as partner of much the same quality as would have been his assumed consent that Kilfoil should work as his servant. His consent in the latter case would have been that he could work for Scudder; in the former, that he could work in the interest of Scudder. To this extent only was there a consent that Kilfoil should engage in business while Scudder was still in business. When Kilfoil ceased to be a partner, and even that consent was withdrawn by the cessation of the firm relationship, he had acquired no right to engage in business on his own account, in contravention of the terms of his original contract."

In the case of Faust v. Rohr, 166 N. C. 187, 81 S. E. 1096, the Supreme Court of North Carolina also quotes the above language from Scudder v. Kilfoil, and disapproves the holding in Norris & Cochran v. Howard, in the following language:

"But the learned counsel cite and rely mainly on Norris & Cochran v. Howard, 41 Iowa, 508, and the conclusion of the court, founded upon facts substantially the same as those in this case, supports the defendant's contention; but we think the reasoning of the court is fallacious and the deduction therefrom is unsound. The court clearly loses sight of the precise nature of the stipulation forbidding the vendor from engaging in similar business, and of the object for which it was inserted in the contract, and therefore it was led into the error of assuming that 'it formed an impediment to his becoming a partner' with his vendor. If we admit the premise that it does, the conclusion may well be warranted; but this is a false assumption, as we respectfully think, for the object was the prevention of competition, and he does not become a competitor by entering the copartnership. We are much better satisfied with the reasoning and statement of the law as contained in the case of Scudder v. Kilfoil, 57 N. J. Eq. 171, 40 Atl. 602, to which we have referred. We are not inadvertent, though, to the clear distinction drawn in Norris & Cochran v. Howard, supra, between the sale of the good will of a business and a restrictive covenant like the one found in this contract, which is as follows: 'The agreement not to buy grain in Prairie City, nor thereafter to engage in such business at that place, is a thing distinct from the transfer of the mere good will. The legal meaning of 'good will,' as defined by Lord Eldon, 'is nothing more than the probability that the old customers will resort to the old place.' 'It is nothing more than a hope, grounded upon a probability.' Parsons on Partnership (2d Ed.) p. 273. 'The sale of a good will, in the absence of any express stipulation, does not preclude the seller from setting up the same kind of business in the same neighborhood, if he does not describe himself as setting up the identical business that has been purchased.' Smith's Mercantile Law, p. 252, and cases cited. While this is a correct statement of the law so far as it goes, it was not carried by proper argument to its legitimate and logical sequence by keeping in mind the true nature and intended purpose of a stipulation against engaging in a similar occupation. This also disposes of the position taken in the brief of defendant's counsel that there is a necessary repugnancy between the said expressed stipulation and the subsequent agreement of partnership, for which they rely on Redding v. Vogt, 140 N. C. 562, 53 S. E. 337, 6 Ann. Cas. 312, and Burns v. McFarland, 146 N. C. 384, 59 S. E. 1011, in the former of which cases it was said: 'When the parties to a contract come to a fresh agreement of such a kind that the two cannot stand together, the (legal) effect of the second agreement is to rescind the first.' And in Myers v. Carnahan, 61 W. Va. 414, 57 S. E. 134, also cited by them: A subsequent contract, which does not by express terms abrogate an earlier one, will operate as a discharge of it, in the absence of an express agreement to that effect when clearly inconsistent with the continued existence of the original contract. But here we come back to the original proposition that the two contracts are not inconsistent when properly considered and construed and the whole argument is based upon the false premise that they are. The quotation from 20 Cyc. 1281, is founded solely upon the authority of the Iowa decision, which we are unable to follow, as we consider it at variance with reason, a broad view of the contract, and the clear intention of the parties."

We quote further from this case, as the statement is applicable to the instant case:

"The object of the plaintiff in making the contract was to prevent competition on the part of the defendant, either directly or indirectly, either as principal or servant, and this must have been well understood by the defendant. It was to suppress rivalry between the two men as barbers, and this formed a material part of the consideration or inducement for making the agreement. If the intention and purpose of the parties was the prevention of competition, and no other can be deduced from the plain terms of the agreement, then it cannot be that the formation of the second copartnership was an abrogation of this stipulation in the contract for the dissolution of the former copartnership, which contained the negative covenant, and for the simple reason that, by becoming the plaintiff's partner, the defendant in no way was brought into competition with him; but the opposite result would necessarily follow. While the new copartnership lasted, they worked in harmony, the interest and advantage of one extending to both, and there was therefore no conflict of interests; but it would have been otherwise had the two been pitted against one another in a business rivalry, each of them striving for the mastery, and this was what the covenant was manifestly intended to prevent."

A reasonable construction of the contract in this case, when construed in the light of the parol testimony, is that Schluter desired to acquire the business owned by the firm and at the same time avoid entering into competition with McLeod in the future. He frankly admitted while on the stand that McLeod was a good solicitor, especially for hail insurance. What is here said disposes of the first four assignments.

We think the court should have sustained the plaintiff's sixth special exception to the sixth paragraph of defendant's original answer, which sets up an abrogation of the contract by the formation of the second partnership.

[4] McLeod should not have been permitted to testify that he did not sell plaintiff the good will of the business. It is clear from the written contract that appellant purchased McLeod's interest in the partnership business, except the right to sell life insurance, and this unquestionably included the good will. Over the objection of appellant, McLeod was permitted to testify that, at the time the written agreement was executed, the parties entered into a verbal agreement that McLeod would be permitted to write hail insurance in Childress county. The effect of this testimony is to contradict and vary

the terms of the written contract and was not admissible under the pleading.

For the errors indicated, the judgment is reversed, and the cause remanded.