### Henry Vogt Machine Co. v. Thurstensen.

(Decided Dec. 1, 1933.)

CRAWFORD, MIDDLETON, MILNER & SEELBACH for appellant.

T. M. GALPHIN, Jr., GORDON, LAURENT & OGDEN and SINCLAIR DANIEL for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

The Henry Vogt Machine Company has appealed from a judgment requiring it to pay Soren Thurstensen $50 each month from October 16, 1929, to April 29, 1947.

Thurstensen entered the employment of the Henry Vogt Machine Company in 1895, and so continued until October 16, 1929, when he was discharged. Thurstensen was of an inventive turn of mind and obtained while so employed fifteen patents, which were assigned by him to the Henry Vogt Machine Company. This controversy has grown out of three contracts he made with it while so employed. This is the first one they made:

"Louisville, Ky., Dec. 31st, 1900.

"This agreement made this 31st day of December, 1900, between Soren Thurstensen, party of the first part, and Henry Vogt Machine Co., party of the second part, both of the County of Jefferson, State of Kentucky.

"Witnesseth: that whereas letters patent of the United States for an improvement in stills for ice machines were granted to the party of the first part, and whereas the party of the second part is desirous of manufacturing stills containing said patented improvements; now, therefore, the parties have agreed as follows:

"1. The party of the first part agrees, and by these presents do sell, assign, and transfer unto the Party of the second part, the whole right, title and interest in and to the said improvement in stills for ice machines; and to the letters patent therefor aforesaid for consideration later mentioned.

"II. The party of the first part further agrees to assign and transfer unto the party of the second part any and all patents he may design, apply for or receive while in their employ.

"III. The party of the second part agrees to pay to the party of the first part a salary of Forty-eight [48.08] Dollars and eight cents per week for

services as chief draftsman and inventor for the full length of term that the party of the first part remains in their employ.

"IV. The party of the second part further agrees that should the party of the first part die, or become disabled before the term of the patents expire, to pay to the party of the first part, or to his heirs or legal representatives, the sum of Fifty [$50.00] Dollars per month, beginning at death or disability and continue until the expiration of the term for which the patents are or may hereafter be granted. The party of the second part further agrees, that if at any time previous to expiration of patents they dispense with the service of the party of the first part, to pay to the party of the first part the sum of Fifty [$50.00] Dollars a month, beginning from the time first party leaves their employ and continue until the expiration of the term of patents. Should the party of the first part voluntarily leave the employ of the party of the second part, the party of the second part may at its option pay to the party of the first part the sum of Fifty [$50.00] Dollars per month until the expiration of the term of the patents, or they may re-assign to the party of the first part all patents and their liability to him then stop and this agreement is to become null and void.

"In witness whereof, the parties above named have hereunto set their hands the day and year first above written at Louisville in the County of Jefferson and State of Kentucky

> "Soren Thurstensen
> "Henry Vogt Machine Co.,
> "Per Henry Vogt, President."

This agreement covers three things, namely:

(1) The transfer of certain patent rights by Thurstensen to the Henry Vogt Machine Company, and an agreement on the part of Thurstensen to assign and transfer to the Henry Vogt Machine Company any and all patents which he might design, apply for, or receive while in the employ of the Henry Vogt Machine Company.

(2) A weekly compensation of $48.08 ($2,500 per

annum) from the Henry Vogt Machine Company to Thurstensen for the full time which Thurstensen might remain in the employ of the Henry Vogt Machine Company.

(3) A payment in the nature of a pension to Thurstensen or to his estate in the event of his death or the termination of his employment before the expiration of his patents, with the option to the Henry Vogt Machine Company, in event Thurstensen quit its employment, to rid itself of the obligation to pay this pension by re-assigning such patents to Thurstensen.

Thurstensen continued to work under this arrangement without complaint until 1911, when he wrote this letter to his employer:

"Louisville, Ky., May 8th, 1911.

"Henry Vogt Machine Co., Louisville, Ky.

"Dear Sirs: Referring to the question of "Water Tube Boiler", as mentioned by me Saturday morning, I have in mind a construction which will not only be far cheaper to manufacture, but will be a better boiler in every way than our present type, it will require much less brick work and less space, it will have practically all the good features of our present construction and none of those features to which the trade have objected, and our competition usually used to condemn our boiler.

"Before getting up a design for this boiler I would like to have a few little difficulties straightened out. In the first place, it is impossible for me to attend to getting our order list for machines, figure on new work, go out and sell machinery, and design and get up new improvements without something getting neglected. Of course, B. F. Kaubaugh makes out a few orderlist, but he has his hands full with other work such as building plans, etc., so it is impossible for him to attend to all.

"The trouble is we have been getting along with too little help in the drafting room and in the busy season I have to spend a great part of my time doing work that could be done with much cheaper help. In other words I know I could be of more benefit to the H. V. M. Co., if I had more help so I could spend more time looking after improve-

ments and reducing cost of manufacture both in ice machines as well as in boiler line.

"I realize that it is necessary for me to go out at times on important jobs and I think my record shows I have done the company good service on these trips and I have no objection to continue to go out when occasion occurs when it would be best for me to go, but if the work of a routine character is to accumulate while I am away so that I don't know where to begin when I return, something will have to suffer and that means that improvements cannot be made as a general rule. Another matter quite important also, at least to me, is the question of my compensation.

"I have never received more than a fair salary for my services, just what I could get anywhere without making assignment of all patents on improvement to the company. Now I think that it would be nothing but fair, if I received a very small royalty on the inventions that I make and patent or in lieu of this that my salary be not less than $5000.00 a year. I would much prefer the former arrangement and if I did not make good with my improvements you would have nothing extra to pay. I trust you will look at this matter in the same fair spirit that I do. I have always when I wanted to accomplish something kept at it until I succeeded and undoubtedly will do so this time and just now I want to get up a cheaper and better boiler and reduce the cost of manufacturing several parts of our ice machine.

"Yours respectfully,

"S. Thurstensen."

The Henry Vogt Machine Company made no written reply to this letter, but it elected to and thereafter made yearly payments to Thurstensen of $5,000. This arrangement continued until April 3, 1916, when the following letter was written by Thurstensen to the Henry Vogt Machine Company and accepted by it:

"Louisville, Ky. April 3, 1916.

"Henry Vogt Machine Co., Louisville, Kentucky.

"Gentlemen: In consideration of an increase in my salary from $5,000.00 to $7,500.00 per year

payable weekly by the Henry Vogt Machine Co., I hereby agree and contract to continue my services as chief engineer and to make assignments to the company of all improvements, inventions and patents made by me during my employment and continue in full force the terms and conditions as outlined in my letter of May 8th, 1911. Soren Thursten. Accepted. Henry Vogt Machine Co. By G. A. Heuser.''.

This last letter refers to the letter of May 8, 1911, and indicates the parties intended to change nothing except to make a raise of $2,500 in the salary of Thurstensen, so the letter of May, 1911, is the storm center of this controversy.

The Henry Vogt Machine Company contends that the letter of Thurstensen to it dated May 8, 1911, and its acceptance constituted a new contract, which, as to future employment and compensation for the assignment of future patents, superseded the old written contract of December 31, 1900. The Henry Vogt Machine Company contends that at the time Thurstensen was discharged on October 16, 1929, he was working under the contract of employment dated April 3, 1916, and that the contract of December 31, 1900, has nothing whatever to do with this case. The original written contract of December 31, 1900, did not obligate Thurstensen to work for any definite term. Thurstensen could have quit at any time he saw fit. The Henry Vogt Machine Company contends that the effect of the letter of May 8, 1911, was to give to it two options: One to retain Thurstensen at $2,500 per annum and pay him a royalty on his patents; the other to pay him simply a straight salary of $5,000 per annum without royalties.

This idea which the Henry Vogt Machine Company now advances grows out of its confusing the royalty to which Thurstensen refers in the letter of May 8, 1911, with the pension provided for in the contract of December 31, 1900.

Our problem is to determine just what it was upon which these parties agreed in 1911, and there can be no better way to discover that than to observe carefully just what they did back there when they yet were working together harmoniously without a suspicion of the troubles that have since arisen between them.

Between 1911 and 1916, Thurstensen obtained and assigned to the Henry Vogt Machine Company, three patents, and if the contract of 1911 superseded the contract of 1900, as the Henry Vogt Machine Company now contends, why did it then accept the assignment of these and why did Thurstensen make the assignments of them, for there is nothing in the contract of 1911 that requires Thurstensen to assign to it any patent he might obtain.

Thurstensen's obligation to assign these patents cannot be spelled out of any of these contracts, except the one made in 1900, and the one made in 1916, yet between 1911 and 1916 he made, and his employer accepted, assignments of three patents; between 1916 and his discharge in 1929, three more such assignments were made and accepted; and yet another was made and accepted in 1930, after Thurstensen had been discharged. The parties to these three contracts treated the contract of 1900 as having continued in effect with nothing changed therein by the contract of 1911, except an increase in the salary of Thurstensen from $2,500 to $5,000 per annum, and that the contract of 1916 had no effect except to raise his salary to $7,500 per annum.

We set out in Menefee v. Rankins, 158 Ky. 78, 164 S. W. 365, just when a written contract would be construed to have superseded a previous contract between the same parties, and when we view this situation in the light of what is written there we are forced to say the contract of 1911 had no effect on the contract of 1900 other than to raise the salary of Thurstensen, and the only effect of the contract of 1916 was to raise the salary again. This last contract specifically refers to and continues the contract of 1911 and contains the further proposal of Thurstensen to continue to make assignments of improvements, inventions, and patents, an obligation nowhere imposed upon him except in the contract of 1900, and this reference to it in the contract of 1916 shows the parties were then treating the contract of 1900 as in effect, except in regard to the salary of Thurstensen. The trial court found the contract between these parties to be just what they, by their acts and conduct, show they regarded as the contract between them, and that judgment is affirmed.