John M. JONES and Ramona Jones, his wife, Appellant,

v.

WHITE SULPHUR SPRINGS FARM, INC., and J. B. Marston, Jr., Appellees.

WHITE SULPHUR SPRINGS FARM, INC., Appellant,

v.

John M. JONES and Ramona Jones, his wife and J. B. Marston, Jr., Appellees.

Court of Appeals of Kentucky.

June 13, 1980.

Discretionary Review Denied Oct. 7, 1980.

Nathan Elliott, Jr., Harbison, Kessinger, Lisle & Bush, Lexington, for John and Ramona Jones.

William A. Young, Frankfort, for J. B. Marston, Jr.

Peter M. Davenport, Lexington, for White Sulphur Springs Farm, Inc.

Before REYNOLDS, HOGGE and WILHOIT, JJ.

HOGGE, Judge.

This appeal involves conflicting claims to certain real estate. John and Ramona Jones are the owners of certain property located on U. S. Highway 460 in Scott and

Franklin Counties. Mr. Jones leased the property, with exception of four (4) acres on which a residence was located, to White Sulphur Springs Farm, Inc. The lease gave White Sulphur a right of first refusal in the event that Jones elected to sell the farm. Jones became interested in selling, and Mr. & Mrs. Jones accepted an offer from J. B. Marston, Jr. Their agreement was subject to the right of first refusal in the lease. White Sulphur attempted to exercise its right of first refusal. Marston, who contended that the right was not properly exercised, brought suit for specific performance on his contract with the Joneses. Judgment in favor of Marston was entered by the Franklin Circuit Court. Separate appeals from that judgment have been filed by White Sulphur and Mr. and Mrs. Jones.

The right of first refusal, as described in the lease to White Sulphur, read as follows:

11. In the event first party shall desire to sell said farm other than by public auction during the term of this lease or any renewals thereof, he shall require a written offer from a prospective purchaser and second party shall have the right of the first refusal to purchase said farm at the price set forth in said written offer. Second party shall have thirty (30) days after actual receipt of notice and a copy of such written offer to notify first party of his exercise of this option.

Marston's offer to purchase "that certain farm . . . containing approximately 450 acres located on the north side of Highway 460 . . . and . . . 110 acres more or less located on the south side of Highway 460" for $800.00 per acre was made April 3, 1974. It was accepted by the Joneses April 8, 1974.

An addendum to the contract was executed which provided that in the event White Sulphur failed to exercise its first refusal option, "then upon payment of the initial payment of One Hundred Thousand Dollars" the Joneses agreed to convey a deed for residence and four acre lot. A second addendum required Mr. and Mrs. Jones to make certain repairs to the property due to tornado damage.

After execution of the documents, White Sulphur was informed that it had thirty (30) days within which to meet the offer. Within that time, White Sulphur's attorney, Robert Miller, notified Mr. Jones that it was exercising the option pursuant to the lease to purchase for the terms laid out in the documents representing the offer by Marston. Negotiations began between White Sulphur and the Joneses which resulted in the drafting of a contract which included terms in addition to or in variance with the Marston contract. These terms included a provision allowing substitution of an escrowed cash fund as security on the notes in lieu of a lien on the property itself and a provision nullifying the Joneses' obligation to make a $4,000.00 payment in lieu of repair of tornado damage.

Among the communications passing between Mr. Miller of White Sulphur and Mr. Bradley, attorney for Mr. and Mrs. Jones, was a letter dated June 26, 1974 which stated:

Attached hereto is a properly executed copy of the contract of sale you prepared and mailed to me in regard to the above transaction. We are hereby accepting the terms according to the contract or in the alternative if your clients decide not to execute said contract, we are hereby accepting the terms of sale according to the Marston offer and two addendums of offer.

Around the first of July, Marston contacted Mrs. Jones, tendered a certified check for $100,000.00 and demanded that a deed be delivered to him for the residence and 4 acres. Mrs. Jones refused, and the suit by Marston followed. It is agreed by the parties that White Sulphur has never tendered payment for the farm; in fact, White Sulphur was adjudged bankrupt on May 25, 1978.

The Franklin Circuit Court concluded that in exercising the option, White Sulphur became bound by all of the terms and conditions contained in Marston's written offer to purchase. The negotiations between White Sulphur and Jones which had the effect of modifying the terms of Marston's

written offer to purchase, was a rejection of the right of first refusal. All rights which White Sulphur may have had terminated when White Sulphur failed to tender the $100,000.00 called for in Marston's written offer to purchase within 90 days of the April 3, 1974 offer. The Franklin Circuit Court further concluded that the total purchase price due from Marston was $800.00 per acre: the $100,000.00 downpayment was merely part of that amount.

The first issue before this Court is whether appellant White Sulphur properly exercised its right of first refusal. The resolution of this issue involves two questions: (1) did White Sulphur fail to properly exercise the right by reason of negotiating terms different from those in the Marston contract? and (2) did White Sulphur forfeit any rights which it may have had by failure to tender the price offered?

Although it is argued that a third party contracting to purchase property subject to an option has no legal right to demand that the option be exercised in a proper manner, we find authority that third parties do have such rights. In *Coastal Bay Golf Club, Inc. v. Holbein*, 231 So.2d 854 (Fla.App. 1970), it was recognized that a prospective purchaser had the right to require strict compliance of the lessee with the terms of the first refusal provisions of the lease.

One of the most recent Kentucky cases regarding exercise of an option is *Brownies Creek Collieries, Inc. v. Asher Coal Mining Company*, Ky., 417 S.W.2d 249 (1967). This controversy, involving optionor and optionee, arose in a slightly different fashion than the *Coastal Bay Golf Club* case but clearly sets forth the principle that:

A contract provision giving simply the "right of first refusal" (as here), without any qualifying terms, means according to general custom and practice that the holder has the right to elect to take the property at the same price and on the same terms and conditions as those of an offer by a third person that the owner is willing to accept. *Corbin on Contracts*, Vol. 1A, section 261, pp. 470, 477, 478. The agreement is not void for failure to

specify definite terms and conditions of the acquisition, because they will be supplied by the third person's offer. However, this presupposes that the holder of the right of first refusal can and will take the property on the same terms and conditions as set out in the third person's offer. Of course if the holder of the right of first refusal cannot meet exactly the terms and conditions of the third person's offer, minor variations which obviously constitute no substantial departure should be allowed. And defeat of the right of refusal should not be allowed by use of special, peculiar terms or conditions not made in good faith. But if a material variation from bona fide terms and conditions should be necessary the right of refusal will fail as impossible of performance.

In *Cozart v. Turley*, Ky., 411 S.W.2d 481, 485 (1966), it was stated that an option holder exercises the option when he gives as much or more than the option requires.

██ In this case the agreement which White Sulphur and Jones ultimately negotiated varied from the offer of Marston on several different matters. For example, no payment was to be made by the Joneses in lieu of tornado damage repair; White Sulphur was to receive rights under certain insurance policies of the Joneses on the residences, and beyond that, the farm was accepted as it was after the tornado damage. White Sulphur was allowed to substitute cash for a lien on the premises. There were other differences in addition to these.

The variations are material. Relinquishing the right to a lien and to payments for damages made White Sulphur's offer less than Marston's leads to the conclusion that White Sulphur never effectively exercised the option. However, it is argued that a binding contract arose immediately upon notification of exercise of the option according to the terms of the Marston offer, and that the modified terms ultimately negotiated were immaterial.

██ However, it is our opinion, that if White Sulphur may have at one time had

any superior right, it was ended by the failure of White Sulphur to timely tender payment, or even to be willing and able to pay for the land.

It has been stated that when a lessee holding a right of first refusal receives notice of the lessor's desire to sell, he must indicate his acceptance within the time specified in the agreement, *and* must be *willing and able to pay* for the land *at that time*. Note, The Right of First Refusal Appendant to a Lease, 53 *Iowa L.Rev.* 1305, 1316 (1968). White Sulphur's lease stated that White Sulphur would have the right of first refusal "to purchase said farm at the price set forth" in the third party's offer. The words "purchase" and "buy" in an option have been interpreted as referring to a completed transaction where the vendee pays the agreed price and the vendor delivers the deed. Thus in several cases the courts have concluded that where the optionee is given the right to purchase a certain piece of property, it is indicative of an intention that such exercise is only to be accomplished by payment of the purchase price. Annotation, 71 *A.L.R.3d* 1201 § 13 at 1252 (1976).

In the case before us, the Court could properly conclude from the evidence that White Sulphur neither tendered the purchase price, nor was willing and able to pay it, although White Sulphur had agreed to purchase the farm under the terms if the Marston offer, which called for payment within 90 days of the offer. Mr. Holdren, President of White Sulphur, testified that he had their attorney Robert Miller, handle the transaction, and that Mr. Miller was trying to get in touch with the Joneses to close the transaction.

He testified that the payment was to come from a temporary, 30–60 day loan to White Sulphur Springs from Shoppers Choice, Inc., of which Holdren owned 52% of the capital stock. There had been no director's meeting to authorize such a loan; Holdren did not know if there was any by-law of the corporation allowing him such authority without a vote; and money was never actually transferred to White

Sulphur or Miller in preparation for tendering to the Joneses. Holdren testified that arrangements had been made with an insurance company for a permanent loan and then amended his testimony to state it was two or three insurance companies. He could not identify any of the companies, but stated he could ask his employees and check for correspondence if they had any on record. He stated they were "just waiting on permanent money." White Sulphur was later adjudged bankrupt on May 25, 1978. On the basis of the record in this case, we cannot say that the trial court erred in determining that White Sulphur's attempted exercise of its right of first refusal was not followed by timely or any tender of the downpayment and was therefore ineffective.

The next issue before this court is whether the agreement between the Joneses and Marston should be rescinded on the grounds that there was no meeting of the minds or mutual assent to all the material terms of the contract. The argument that the agreement should be rescinded is based on the assertion that Mr. and Mrs. Jones believed that the $100,000.00 down payment was separate from, and in addition to the $800.00 per acre. There is nothing in the contract itself to establish that the $100,000.00 was a separate sum. It has long been the law in Kentucky that where the parties put their agreement in writing, all prior negotiations and agreements are merged in the instrument, and each is bound by its terms unless his signature is obtained by fraud or the contract be reformed on the grounds of fraud or *mutual* mistake, or the contract is illegal. *Hopkinsville Motor Company v. Massie*, 228 Ky. 569, 15 S.W.2d 423, 424 (1929); *Childers & Venters, Inc. v. Soward*, Ky., 460 S.W.2d 343 (1970). Mr. and Mrs. Jones have not asserted that there has been fraud or illegality of contract. Neither is it asserted that a *mutual* mistake occurred. As we have stated, a mistake must generally be mutual to afford grounds for cancellation or rescission. *Sheeran v. Irvin*, 230 Ky. 307, 19 S.W.2d 976 (1929). To rescind a contract for a unilater-

al mistake, the consequences of the mistake must be so grave that the enforcement of the contract would be unconscionable, the mistake must relate to a material feature of the contract, the mistaken party must have exercised ordinary diligence, and the rescission must be possible without serious prejudice to either party. We cannot say that this is the case here; particularly, we do not believe there was ordinary diligence by Mr. and Mrs. Jones or their counsel in the negotiations. Mrs. Jones testified that she did not read the contract with Marston. The representative selected by the Joneses to handle the transaction did not inquire whether the $800.00 per acre consideration was to be for the entire farm.

We hold that Mr. and Mrs. Jones were not entitled to a rescission of their contract with Marston and that the trial court acted properly in so ruling.

The judgment of the circuit court is affirmed as to both appeals.

All concur.