Hillsborough
No. 84-115

### ALLIED ADJUSTMENT SERVICE

v.

### GEORGE F. HENEY, d/b/a
### SOUTHERN NEW HAMPSHIRE INVESTIGATIONS

November 13, 1984

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Andrew D. Dunn* and *Martha V. Gordon* on the brief, and *Mr. Dunn* orally), for the plaintiff.

*Bossie, Kelly & Hodes P.A.*, of Manchester (*Robert F. Bossie* on the brief and orally), for the defendant.

BATCHELDER, J. Petitioner Allied Adjustment Service (Allied) appealed the superior court's denial of an injunction against the defendant, George F. Heney, a former employee of Allied, under a covenant not to compete which is governed by Massachusetts law.

On November 3, 1983, Allied brought a petition for temporary and permanent injunction in superior court. On November 28, 1983, the Court (*Dalianis*, J.) temporarily enjoined Heney from soliciting or accepting assignments from Allied's clientele. Heney cross-petitioned for rescission of the employment agreement. The court, after a hearing, denied Heney's cross-petition for rescission. The court found the non-competition clause to be ancillary to a valid employment contract and a reasonable restraint of trade. Allied's request for a permanent injunction, nonetheless, was denied on the ground that Allied had shown no trade secrets or confidential information and had not demonstrated injury to its good will by Heney's conduct.

The question on appeal is whether the trial court erred in finding that the plaintiff produced no evidence of injury to Allied's good will by Heney's action. We hold that the record warrants the trial court's finding injury to good will and therefore remand for a new trial.

Allied is a Massachusetts corporation engaged in the business of insurance investigation and adjustment of claims in New Hampshire, Massachusetts, Vermont, Maine, and Connecticut. Heney was employed as manager of Allied's Manchester, New Hampshire, office from April 21, 1980 to September 23, 1983.

Allied and Heney signed two employment contracts, one on April 10, 1980, and the other on October 4, 1982. Both contained similar non-competition clauses. The 1982 contract, which superseded the 1980 contract, prohibited Heney, during his employment at Allied and for twenty-four months thereafter, from *soliciting or accepting business from Allied's clientele.* The effect of the restriction was limited to those of Allied's clients located within a fifty-mile radius

of Manchester. Allied's clientele was defined as "insurance companies, self-insurers, insurance agents, attorneys, and other business organizations or persons" that had retained Allied's services and been served by the Manchester office. The contract recited that Allied's clientele was the exclusive property of Allied and that all information used to solicit those clients was confidential. The contract further specified that questions pertaining to the validity, construction, execution and performance of the agreement are to be construed according to Massachusetts law.

Heney began doing business as Southern New Hampshire Investigations (SNHI) while still employed by Allied. On September 15, 1983, Heney and Lisa Lynch, his partner at SNHI, leased office space for SNHI. That same day, Heney tendered his notice of termination to Allied. On September 20, 1983, Heney, under SNHI's letterhead, wrote to approximately thirty-five insurance companies advising them that he was offering investigative and adjusting services on an independent basis, and soliciting their business for SNHI. On September 23, 1983, Heney left Allied's employ and thereafter devoted his exclusive efforts to SNHI's investigative and adjusting work.

■  Where parties to a contract select the law of a particular jurisdiction to govern their affairs, that choice will be honored if the contract bears any significant relationship to that jurisdiction. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187; *cf. Consolidated Mut. Cas. Co. v. Radio Foods Co.*, 108 N.H. 494, 496–97, 240 A.2d 47, 49 (1968) (choice of law in a contract case, absent an express choice, is governed by the intention of the parties and their reasonably justified expectations). The parties selected the law of Massachusetts, which bears a relationship to the controversy as the State of incorporation and the place of business of Allied.

■■  The granting or denial of specific performance of a contract rests within the sound discretion of the trial court depending on the circumstances of each case. *Gulf Oil Co. v. Rybicki*, 102 N.H. 51, 52, 149 A.2d 877, 879 (1959). "[T]he decree will be sustained unless it appears upon the record to have been unsupported by the evidence or to have been based upon untenable grounds." *Id.*

■  Under Massachusetts law, "[a] covenant not to compete contained in a contract for personal services will be enforced if it is reasonable, based on all the circumstances. In determining whether a covenant will be enforced, in whole or in part, the reasonable needs of the former employer for protection against harmful conduct of the former employee must be weighed against both the rea-

sonableness of the restraint imposed on the former employee and the public interest." *All Stainless, Inc. v. Colby*, 364 Mass. 773, 778, 308 N.E.2d 481, 485 (1974).

██ "A former employer is not entitled by contract to restrain ordinary competition." *Id.* at 779, 308 N.E.2d at 486. The court in *All Stainless* continued:

> "Any restraint must be consistent with the protection of the good will of the employer. The former employee must be in a position where he can harm that good will, perhaps . . . . because of his knowledge of some business secret or confidential information [citation omitted] or perhaps . . . *because of the former employee's close association with the employer's customers may cause those customers to associate the former employee, and not the employer, with products of the type sold to the customer through the efforts of the former employee.*"

*Id.* at 779–80, 308 N.E.2d at 486 (citation omitted) (emphasis added). *See also New England Canteen Service, Inc. v. Ashley*, 372 Mass. 671, 363 N.E.2d 526 (1977) (trade secrets, confidential information or injury to good will permit injunctive relief for reasonable covenants).

"Good will is generally understood to mean the advantage that accrues to a business on account of its name, location and reputation, which tends to enable it to retain the patronage of its old customers." *Murray v. Bateman*, 315 Mass. 113, 115, 51 N.E.2d 954, 955 (1943).

*All Stainless, Inc. v. Colby*, 364 Mass. at 781, 308 N.E.2d at 486–87, held that an employee salesman could be restrained from competing with his former employer within his former sales territory.

Turning to the case before us, the trial court, in ruling that Allied had not met its burden to justify an injunction, first quoted testimony of Allied's vice-president Walter Gillespie. Gillespie denied having *personal knowledge* of whether Heney took any of Allied's good will when Heney left Allied. Gillespie stated he had *"hoped"* that Heney had not. The court then relied on evidence that SNHI had received assignments from only five of the more than sixty companies comprising Allied's clientele. From this evidence and other evidence in the record, the court reasoned that:

> "Since Allied claims a reduction of approximately 50% in its average monthly claim assignment rate of 50–60 new files and it *cannot offer evidence that defendant has absconded with its goodwill,* the gap can *only* be explained by other reasons

suggested at the hearing: ordinary seasonal slowdown or less effective management since defendant's departure."

(Emphasis added.)

Gillespie's testimony, at most, failed to advance Allied's claim of loss of good will; it did not controvert the notion that Heney had absconded with Allied's clientele or injured its reputation. There was testimony by one of Heney's own witnesses, Nick Georges, an insurance claims supervisor, that he had contacted Heney about handling an adjustment case while Heney was employed at Allied. Heney later performed that assignment for SNHI. Joyce Monz, a claims supervisor for another insurer, testified that she had met Heney through Allied, and had given SNHI seven or eight cases since Heney had left Allied. In light of this testimony, as a matter of law, there is direct evidence on the record that Heney had absconded with Allied's good will; and this evidence was not accounted for in the court's opinion.

The court correctly noted that Allied had demonstrated a loss of only five of its more than sixty clients. However, the court overlooked Heney's own admission that those five were among Allied's biggest customers and that their business accounted for forty-five to fifty-five percent of Allied's business. Gillespie's testimony was that, since Heney had left, Allied's assignments were down by fifty percent. The court's reasoning that the steep decline in Allied's business could be explained *only by reasons other than Heney's competition* cannot stand in light of these facts on the record.

■ The plaintiff's evidence plainly warrants a finding by the trier of fact that Allied suffered a loss of good will by the defendant's conduct. Inasmuch as the trial court erred in concluding that there was no evidence of loss of good will, we remand for a new trial.

*Remanded for new trial.*

All concurred.