Rockingham
No. 87-226

### KENTUCKY FRIED CHICKEN CORPORATION

### v.

### COLLECTRAMATIC, INC.

July 25, 1988

*Upton, Sanders & Smith*, of Concord, and *James S. Yakovakis P.A.*, of Manchester (*Gilbert Upton* and *James S. Yakovakis* on the brief, and *Mr. Yakovakis* orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Portsmouth (*Peter F. Kearns* and *Stewart Paley* on the brief, and *Mr. Paley* orally), for the defendant.

JOHNSON, J. The defendant, Collectramatic, Inc. (Collectramatic), appeals from a decision requiring that it indemnify the plaintiff, Kentucky Fried Chicken Corporation (KFC), for amounts

the latter paid to settle an action against it. The action in question was brought against KFC by the employee of one of its own franchisees and involved equipment KFC had purchased from Collectramatic. The Superior Court (*Temple*, J.) approved a Master's (*Charles T. Gallagher*, Esq.) report granting KFC's motion for summary judgment in the case on the ground that the agreement under which KFC purchased the equipment from Collectramatic expressly provided that Collectramatic would indemnify KFC under the circumstances in question. For the reasons stated below, we affirm.

In August 1972, KFC and Collectramatic (then known as "Commercial") entered into an agreement (hereinafter "1972 agreement") concerning, *inter alia*, KFC's approval of Collectramatic's Model 720 pressure fryer for use by KFC franchisees. Paragraph 17 of this agreement provided in part as follows:

"[Collectramatic] is not, and shall at no time represent itself to be, an agent or representative of KFC and will indemnify and save harmless KFC from any claim or action . . . for products liability based upon this Agreement. . . ."

Paragraph 24 of the agreement further provided:

"[T]he provision[ ] of paragraph[ ] . . . 17 . . . , hereof shall survive the termination of this Agreement."

In August 1974, KFC and Collectramatic entered into a second agreement (hereinafter "1974 agreement") approving terms for the sale to KFC franchisees of a number of Collectramatic products, again including the Model 720 pressure fryer. The 1974 agreement included no indemnity provision, and paragraph 14 of the new agreement provided in part:

"This Agreement contains the entire understanding between KFC and Supplier concerning the subject matter hereof and supersedes all prior and contemporaneous understandings or representations between the parties relating thereto."

In February 1973, Collectramatic sold a Model 720 pressure fryer to KFC Foods of Salem, Inc., a KFC franchisee, pursuant to the 1972 agreement. In April 1980, Joseph Wise, a KFC Foods of Salem employee, was seriously injured by hot grease that spilled from this fryer. Wise brought actions against Collectramatic and KFC, both of which the parties eventually settled. KFC paid Wise $60,000, and

Collectramatic paid $50,000 to Wise and $9,000 toward a workers' compensation lien.

Following setttlement, Collectramatic brought an implied indemnity action against KFC to recover the settlement amounts it had paid. This court eventually decided that action in KFC's favor. *Collectramatic, Inc. v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 499 A.2d 999 (1985). KFC then brought this express indemnity action against Collectramatic to recover, on the basis of the 1972 agreement, the amounts it had paid Wise. On the parties' motions for summary judgment in this case, the master found for KFC. At a subsequent hearing to determine damages, the trial court awarded KFC $85,272 ($60,000 for settlement and $25,272 for attorney's fees). Collectramatic then filed the present appeal from the master's decision with this court.

One would typically expect that the agreement in effect at the time equipment was bought and sold would determine the parties' rights and duties with respect to that equipment. Collectramatic contends, however, that the merger clause in paragraph 14 of the 1974 agreement clearly demonstrates the parties' intention that the 1974 agreement supersede all previous agreements, including the 1972 agreement. As a result, it argues, all provisions of the 1972 agreement became inoperative for all purposes when the parties entered into the 1974 agreement. Because the indemnification provision of the 1972 agreement thus became ineffective in 1974, and the 1974 agreement itself contains no such provision, Collectramatic takes the position that the master incorrectly found that it had a contractual duty to indemnify KFC for amounts the latter paid to settle claims for injuries which were not sustained until 1980. Indeed, Collectramatic argues, in light of the 1974 agreement's merger clause, the master's appeal to the 1972 agreement's indemnification clause was an appeal to inadmissible parol evidence. Collectramatic further contends that the master incorrectly found inadmissible under the parol evidence rule certain evidence that Collectramatic itself attempted to introduce in support of the above argument.

KFC, on the other hand, argues that the 1974 agreement was prospective only and had no effect on the parties' rights with respect to purchases and sales completed prior to August 1974. In support of its argument, KFC particularly emphasizes the prospective language employed throughout the 1974 agreement and the provision in paragraph 24 of the 1972 agreement that its indemnification clause will survive the contract's termination. KFC

also contends that the master properly excluded certain evidence that Collectramatic sought to offer.

■■ We note at the outset that both the 1972 and the 1974 agreements stipulate that their interpretation and enforcement are to be governed by the laws of the State of Kentucky. In considering similar situations, we have held that "[w]here parties to a contract select the law of a particular jurisdiction to govern their affairs, that choice will be honored if the contract bears any significant relationship to that jurisdiction." *Allied Adjustment Serv. v. Heney*, 125 N.H. 698, 700, 484 A.2d 1189, 1191 (1984). Because KFC and Collectramatic both have their principal places of business in Kentucky, that State does bear a significant relationship to this controversy. *See id.* We will therefore honor the parties' selection of Kentucky law.

■ Collectramatic correctly points out that, under Kentucky law, a court must construe a clear and unambiguous contract strictly in accordance with its written terms. *Veech v. Deposit Bank of Shelbyville*, 278 Ky. 542, 550, 128 S.W.2d 907, 911 (1939); *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966). Moreover, when parties reduce their agreement to writing, all prior negotiations and agreements on the matter typically merge in that writing, resulting in an integrated contract. *Jones v. White Sulphur Springs Farm, Inc.*, 605 S.W.2d 38, 42 (Ky. Ct. App. 1980). Absent a showing of special circumstances, not suggested here, including fraud, mutual mistake, or illegality, the parol evidence rule dictates that evidence of prior or contemporaneous negotiations or agreements not be afterwards admissible to vary the terms of what the parties intended to be an integrated contract. *See id.* Finally, a merger clause is strong evidence that the parties did intend their contract as an integrated one. *See O'Bryan supra; KFC Corp. v. Darsam Corp.*, 543 F. Supp. 222, 224–25 (W.D. Ky. 1982).

■ These rules, however, do not require the conclusion that all provisions of the 1972 agreement merged in the 1974 agreement and that the former constitutes inadmissible parol evidence. As noted, when they reduce their bargain to a writing, the parties integrate in it only those prior agreements that they intend so to integrate. *See Henry Vogt Machine Co. v. Thurstensen*, 252 Ky. 161, 166–67, 66 S.W.2d 77, 79 (1934); *Menefee v. Rankins*, 158 Ky. 78, 82–83, 164 S.W. 365, 367 (1914). In order to determine whether, or the extent to which, a later writing merges or integrates prior agreements, the court must interpret the contract in keeping with

accepted rules of construction. *See O'Bryan*, 413 S.W.2d at 893. Thus, it must not only strictly construe the contract where its terms are unambiguous, *O'Bryan supra*; *Veech supra*, but, where ambiguities are present, it must interpret clauses in light of the parties' intentions as they appear from the contract as a whole. *Veech supra*; *Ex Parte Walker's Executor, on Petition*, 253 Ky. 111, 117, 68 S.W.2d 745, 747 (1933). Where one party alleges that a prior agreement was not intended to be integrated in the writing, the court must determine the extent of intended integration by appeal to both documents. *See Thurstensen, supra* at 161-66, 66 S.W.2d at 77-79; *Menefee, supra* at 178-81, 164 S.W. at 365-66; RESTATEMENT (SECOND) OF CONTRACTS § 213 comment *c*, at 130 (1981).

■■■ In determining the extent to which the parties intended integration in this case, therefore, we must, as the master recognized, examine both the 1972 and the 1974 agreements. Thus the master did not err in admitting the earlier agreement. When we do so, we find, as did the master, that the parties intended the 1974 agreement to be prospective only and that the merger clause does not even purport to affect the parties' rights and duties with respect to completed transactions. The language of the 1974 agreement is entirely prospective and speaks only in terms of what the parties "will" and "shall" do and never about what they have done in the past. This is strong evidence that they intended it to govern future purchases and sales only.

On first reading, the merger clause itself might conceivably appear somewhat ambiguous. That clause states that the 1974 agreement "supersedes" all prior and contemporaneous agreements involving the subject matter of the contract. The word "supersede" is variously defined to mean, *inter alia*, to void, annul, supplant, or replace. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged) 2295-96 (1961). None of these meanings clearly determines whether the contracting parties intended to alter their rights and duties as to completed transactions as well as those to future purchases and sales.

However, when read in the context of the agreement's prospective language, it is clear that the contract's "subject matter" consisted only of designated items yet to be sold, not of similar items already disposed of, and that the scope of the intended integration was similarly limited. The prospective language of the 1974 agreement and the consequent interpretation of the merger clause are also consistent with the indication in paragraph 24 of the 1972

agreement that the parties intended the indemnity provision to survive the termination of that agreement's other terms.

That the parties did so intend the clause is not surprising. For a party to abandon, in a later contract of this type, a right previously bargained for and acquired would certainly be unusual. Indeed, the cases on which Collectramatic relies for the proposition that prior agreements are merged in a writing concern future dealings between contracting parties, not the alteration of rights acquired and duties undertaken in completed transactions. *See, e.g., Jones*, 605 S.W.2d 38; *O'Bryan*, 413 S.W.2d 891.

In short, it is readily apparent to us from the language of the 1974 contract as a whole, and from consistent language in the 1972 contract, that the parties intended to merge in the former only their prior agreements as to terms governing purchases and sales yet to be made. They intended it to have no effect at all on vested rights and concomitant duties with respect to sales already concluded. The master's appeal to the 1972 contract to determine the parties' indemnification rights was thus appropriate appeal to a separate agreement not within the scope of a later integrated document, and not an appeal to parol evidence as Collectramatic suggests.

In considering Collectramatic's further claim that the master improperly refused, on the basis of the parol evidence rule, to consider certain of its evidence, we first note that it was not entirely clear from the master's report what evidence he rejected on the basis of this rule. However, Collectramatic appears to argue that the disputed evidence consists of an affidavit by its president, Winston Shelton, and contracts entered into between Collectramatic and KFC after 1974.

The only material contained in the affidavit that is potentially relevant to the present issue consists of references to the parties' intentions regarding agreements they entered into after 1972. These references suggest that the parties intended those agreements to abrogate any right to indemnification that KFC might previously have possessed. The affidavit thus attempts to vary the terms of post-1972 contracts through reference to intentions not apparent in the writings themselves. Since Collectramatic does not allege fraud, mistake, or any other reason that might justify appeal to such intentions, the affidavit clearly constituted inadmissible parol evidence. *See O. P. Link Handle Company v. Wright*, 429 S.W.2d 842, 847 (Ky. 1968).

Collectramatic correctly argues that the post-1974 contracts themselves were not parol evidence. They were not introduced to prove the parties' hopes or intentions prior to adopting a written contract, but to evidence either changes in the contract to which the parties later agreed in writing or a course of performance indicative of the terms to which they believed themselves bound.

Contrary to Collectramatic's contention, however, it would appear that the master in fact considered these subsequent agreements. He specifically found that Collectramatic's "obligation to indemnify KFC for defects in the fryer was not canceled by the 1974 agreement *or by any subsequent agreement similar in nature to the 1974 agreement.*" (Emphasis added.) By this we understand the master to indicate that, as with the 1974 agreement, he not only considered subsequent agreements, but interpreted them to affect only the terms of future agreements, and not rights and duties already acquired in completed transactions. Moreover, our own analysis of these decisions does not differ from the master's. *See A. L. Pickens Co. v. Youngstown Sheet & Tube Co.*, 650 F.2d 118, 119 (6th Cir. 1981) (under Kentucky law construction of a contract term is a question of law for the reviewing court). The language of each of these agreements is entirely prospective and makes no reference to vested rights and duties. In addition, none of these agreements deals with terms for the sale of the Model 720 pressure fryer, which was discontinued in 1975. As such, the agreements can do nothing to demonstrate post-contractual conduct with respect to that equipment.

We therefore hold that the parties did not intend, by the 1974 agreement, to extinguish KFC's right to indemnification for transactions already completed under the 1972 agreement, and that the master appropriately dealt with the evidence that Collectramatic sought to have him consider.

*Affirmed.*

All concurred.