KOPPERS COMPANY *v.* MISSOURI PACIFIC RAILROAD CO., INC.

CA 90-373                                        809 S.W.2d 830

Court of Appeals of Arkansas
Division II
Opinion delivered May 29, 1991
[Rehearing denied June 26, 1991.]

*Hoover, Jacobs & Storey*, by: *Lawrence J. Brady, Janet L. Pulliam*, and *William C. Mann, III*, for appellant.

*Herschel Friday, James C. Baker, Jr.* and *Frederick S. Ursery*, for appellee.

MELVIN MAYFIELD, Judge. In 1962, appellee, Missouri Pacific Railroad Company, Inc. (MoPac), and appellant, Koppers Company (Koppers), entered into an agreement whereby Koppers contracted to treat crossties, switch ties, bridge lumber, timbers, and other lumber materials used by MoPac in its railway system. MoPac contracted to deliver the materials to Koppers by opentop railroad car, and Koppers agreed to unload and treat the lumber and reload the materials onto a railroad car to be returned to MoPac. The contract also contained a paragraph in which Koppers agreed to indemnify MoPac against any and all claims, judgments, and losses incident to or in any way connected with Koppers' operations under the agreement. In accordance with its provisions, the contract was terminated by MoPac effective March 10, 1984.

On October 14, 1982, a Koppers employee was injured on Koppers' premises when he fell between moving railroad cars owned by MoPac. In August 1984, the employee sued MoPac for injuries sustained, and that suit was settled on April 23, 1987. On June 10, 1985 (subsequent to suit being filed by the employee but prior to the settlement agreement), MoPac made written demand on Koppers to defend, indemnify and hold MoPac harmless.

Koppers refused to do so. On August 22, 1988, MoPac brought suit to enforce the indemnity provision in the parties' contract. The trial court entered judgment for MoPac in the amount of $300,000.00, finding that the indemnity clause survived the March 10, 1984, expiration of the contract and required Koppers to indemnify MoPac. Koppers brings this appeal from that ruling. We affirm.

Under the indemnity clause in the contract, Koppers agreed:

> On behalf of itself, its successors and assigns to fully protect, indemnify and save harmless the Railroad, its successors and assigns against any and all claims, demands, suits, judgments, losses and expenses incident to, or in any way connected with the Contractor's operations under this agreement and howsoever arising, whether by reason of the infringement or alleged infringement of patent rights covering or relating to treating processes, machinery, apparatus, appliances or facilities, or by reason of loss or injury of whatsoever nature, to persons or property or otherwise, excepting loss by fire or by the acts of the employees of the Railroad.

Appellant and appellee stipulated that, at the time of the injury, the contract between the parties was in force. The parties further agreed that the contract terminated prior to suit being filed by the injured Koppers employee against MoPac. They also agreed that the only issue before the trial court was whether appellee's right to indemnification from appellant survived the termination of the agreement.

In holding that the indemnity clause survived, the trial court stated that, although it had not found a case precisely on point, it was "most persuaded" by *Kentucky Fried Chicken Corp.* v. *Collectramatic, Inc.*, 547 A.2d 245 (N.H. 1988). That case involved an indemnity clause by which Collectramatic agreed to protect Kentucky Fried Chicken Corporation (KFC) "from any claim or action . . . for products liability based upon this [a]greement." The agreement was entered into in August of 1972 and specifically provided that the provisions of the indemnification paragraph would survive the termination of the agreement. In 1974, the parties entered into a second agreement which did not contain an indemnity clause and which provided that "this

agreement contains the entire understanding between [the parties] concerning the subject matter hereof and supersedes all prior and contemporaneous understandings or representations between the parties relating thereto."

Collectramatic sold a pressure cooker to KFC pursuant to the 1972 agreement. In 1980, a KFC employee was injured while using this pressure cooker. The employee sued KFC and Collectramatic, and both defendants settled. Then, KFC attempted to recover from Collectramatic the portion of the settlement KFC had paid, basing its claim for indemnity on the 1972 agreement. The court held that KFC was entitled to indemnification under the 1972 agreement and found the parties intended in the 1974 contract to merge only their prior agreements as to terms governing purchases and sales yet to be made, and the parties intended it to have no effect at all on vested rights and concomitant duties with respect to sales already concluded. In regard to the 1972 agreement, the court said:

> One would typically expect that the agreement in effect at the time equipment was bought and sold would determine the parties' rights and duties with respect to that equipment.

*Id.* at 247. And in response to Collectramatic's argument that a provision in the 1974 agreement clearly indicated that the parties intended that the 1974 agreement would supersede all previous agreements, including the 1972 agreement, the court said:

> For a party to abandon, in a later contract of this type, a right previously bargained for and acquired would certainly be unusual.

*Id.* at 248.

Koppers, however, argues that the *Kentucky Fried Chicken* case is only marginally on point and would distinguish that case on the basis that the 1972 agreement provided that the indemnity clause "shall survive the termination of this agreement." The court in that case did not regard this provision to be controlling. It said: "The language of each of these agreements is entirely prospective and makes no reference to vested rights and duties." So, although the 1972 agreement provided that the indemnity clause "shall survive the termination of this agreement" and the

1974 agreement provided that it "contains the entire understand-
ing between [the parties]" and that it "supersedes all prior and
contemporaneous understandings or representations" between
them, the court looked to the intent of the parties and said:

> We therefore hold that the parties did not intend, by
> the 1974 agreement, to extinguish KFC's right to indemni-
> fication for transactions already completed under the 1972
> agreement, . . .

*Id.* at 249.

The appellant concedes that "a contract of indemnity
is to be construed in accordance with the rules for the construction
of contracts generally." *Arkansas Kraft Corporation* v. *Boyed
Sanders Construction Co.*, 298 Ark. 36, 764 S.W.2d 452 (1989).
If there is no ambiguity in the language of the contract, then there
is no need to resort to rules of construction. *Id.* And "the first rule
of interpretation is to give to the language employed by the parties
to a contract the meaning they intended." *Sutton* v. *Sutton*, 28
Ark. App. 165, 771 S.W.2d 791 (1989). The appellant argues,
however, that in contracts of indemnity the losses to be indemni-
fied must be clearly stated and the intent to indemnify against
them must be expressed in clear and unequivocal terms. *Weaver-
Bailey Contractors, Inc.* v. *Fiske-Carter Construction Company*,
9 Ark. App. 192, 657 S.W.2d 209 (1983), is cited in support of
this argument. The *Weaver-Bailey* language is taken from
*Pickens-Bond Construction Company* v. *North Little Rock
Electric Company*, 249 Ark. 389, 459 S.W.2d 549 (1970), and
*Hardeman* v. *J.I. Hass Co.*, 246 Ark. 559, 439 S.W.2d 281
(1969). *Pickens-Bond* explains that the reason for the require-
ment of a clear statement agreeing to indemnify a party against
the consequences of his own conduct is the natural aversion of the
courts to hold one liable for the acts or omissions of another over
whom he has no control. 249 Ark. at 395.

In the present case there is no question that appellant
Koppers agreed to indemnify appellee MoPac "against any and
all claims, demands, suits, judgments, losses and expenses inci-
dent to, or in any way connected with the Contractor's [Koppers']
operations under this agreement and howsoever arising. . . ."
The intent to indemnify is clear enough and the parties stipulated
that the only issue for the trial court to decide was whether

MoPac's right to indemnification "survived the termination of the 1962 agreement between the parties."

The appellant cites *Jones v. Sun Carriers, Inc.*, 856 F.2d 1091 (8th Cir. 1988), in support of its contention that MoPac's right to indemnification did not survive the termination of the 1962 agreement. In that case, Sun Carriers, Inc. purchased from Harvey Jones all the stock of Jones Truck Lines, Inc. The sale was closed on April 29, 1980. The stock purchase agreement provided that Jones agreed to indemnify and hold harmless Sun Carriers and Jones Truck Lines against "any and all *damages, losses, deficiencies, liabilities, claims, costs* and *expenses* . . . arising out of any misrepresentation, breach of warranty or nonfulfillment of any covenant . . . under this Agreement . . . ." 856 F.2d at 1092. The indemnity provision further provided that Sun Carriers had to assert any claims for indemnity within three years after the sale of the stock was closed. Within that time period, Sun learned that the Environmental Protection Agency had informed Jones Truck Lines that its terminal in St. Louis may have been sprayed with waste oils contaminated with dioxin. In fact, in 1970 or 1971, Jones Truck Lines had employed an independent contractor to spray the terminal with waste oil for dust control purposes. Therefore, on April 20, 1983 (nine days before the three-year indemnity cutoff date), Sun notified Jones that it was asserting "potential" liabilities relating to the dioxin contamination. It was not until *after* the indemnity cutoff date that the EPA actually required the terminal to be vacuumed and washed down. Subsequently, workers' compensation claims were filed for two Jones Truck Line employees alleging they had developed cancer from exposure to the dioxin.

Harvey Jones filed suit against Sun seeking a declaratory judgment that he was not required to indemnify Sun for the dioxin contamination. The trial court granted Jones' motion for summary judgment and the Eighth Circuit Court of Appeals affirmed. The appellant in the present case contends that the Eighth Circuit Court's reasoning is applicable here and that it leads to the conclusion that Koppers is not obligated to indemnify MoPac in the present case.

We do not agree with appellant's interpretation of the *Sun Carriers* case. Although the Eighth Circuit Court cited two cases

for the statement that, "[g]enerally, no claim arises under an indemnity agreement until a specific demand is made for something as a legal right or until notice of a lawsuit is given," the court then said: "Here, no potential plaintiffs had made any claims against Sun or JTL by the cutoff date." 856 F.2d at 1096. Thus, it is clear that the reason the court granted Harvey Jones' motion for summary judgment was not because no claims had been made but because the contract provided that Sun Carriers had to assert any claims for indemnity within three years after the sale of the stock was closed.

Obviously, the *Sun Carriers* case involved a different situation from the case at bar. Here, the contract between the parties required Koppers to indemnify MoPac for losses and expenses "incident to, or in any way connected with" Koppers' operations under that contract; however, the contract did not have a specified cutoff date within which claims for indemnity had to be made. Loss or expense was sustained by MoPac because of an injury sustained by an employee of Koppers while the agreement between Koppers and MoPac was in effect. Even though the employee did not file suit against MoPac until after MoPac terminated its agreement under which Koppers treated crossties, bridge timbers, and other wood materials, we think the trial judge was correct in holding that MoPac's obligation to the employee, which it settled, was an "expense incident to" or "connected with" Koppers' operations under the agreement while it was in force.

Affirmed.

COOPER and ROGERS, JJ., agree.