[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 97-1774

CHOICE SECURITY SYSTEMS, INC.,

Plaintiff, Appellee,

v.

AT&T CORP. AND LUCENT TECHNOLOGIES, INC.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Cyr, Senior Circuit Judge,

Saris and Gertner, District Judges. 

Lawrence G. Green, with whom Scott E. Bettencourt and Perkins, Smith & Cohen, LLP were on brief for appellants.
Albert A. DeNapoli, with whom Gretchen Kendall Hamilton and Tarlow, Breed, Hart, Murphy & Rodgers, P.C. were on brief for appellee.

February 25,1998
Per Curiam. From 1991 to 1994, plaintiff-appellee Choice Security Systems, Inc. ("Choice") entered into a series of one-year contracts with five distributors for defendants-appellants AT&T Corporation and Lucent Technologies (collectively: "Lucent"), whereby it became an authorized dealer in Lucent home security systems. Although the pre-1994 contracts included no arbitration clause, the 1994 contracts required the parties to arbitrate "all disputes . . . arising out of or relating to the products furnished pursuant to this Agreement." Both the pre-1994 and the 1994 contracts contained an integration clause as well, which provided that "[t]he terms and conditions contained in this Agreement supersede all prior oral or written understandings between the parties, and constitute the entire agreement between them concerning the subject matter of this agreement." (Emphasis added.)
Choice brought this Lanham Act suit in federal district court, claiming that Lucent fraudulently supplied used or defective home security systems under both the pre-1994 and the 1994 agreements. Citing the 1994 arbitration clause, Lucent moved to stay the district court proceedings pending arbitration on all claims. The district court denied the motion in relation to claims arising under the pre-1994 contracts.
Lucent contends that the integration clause in the 1994 contracts effectively incorporated the newly-minted arbitration clause into the pre-1994 contracts as well. Thus, in its view the "subject matter" dealt with in the 1994 contracts was not simply Choice's agreement to purchase and market Lucent products for a discrete twelve-month interval, but a retroactive renegotiation of the fundamental terms of the ongoing dealership "relationship" between Lucent and Choice. See Security Watch, Inc. v. Sentinel Systs., Inc. and AT&T, No. 96-2959 (W.D. Tenn. Oct. 27, 1997) (dismissing action by Lucent dealer based on same contract). A ruling denying a motion to stay district court proceedings pending arbitration is reviewed de novo. PaineWebber, Inc. v. Elahi, 87 F.3d 589, 592 (1st Cir. 1996).
Lucent misplaces its reliance on provisions in the 1994 contracts which dictate the manner in which Choice must conduct its own business, such as employee training, pledges of confidentiality, and the use of Lucent manuals. The parties to a dealership contract covering a discrete term may have every reason to make such codes of business conduct applicable and enforceable during the prescribed contract term without ever having contemplated their retroactive application to the already completed dealer performance rendered under earlier dealership contractssince displaced. Furthermore, even dealer-compliance terms arguably applicable in relation to Lucent products furnished to Choice under its pre-1994 contracts such as the dealer's duty to inform Lucent of product defects and customer complaints fairly can be viewed as imposing current responsibilities which would accrue only if Choice were to discover the defect or receive the customer complaint within the one-year contract term. In addition, no other contract provision expressly states or remotely intimates that the parties ever contemplated so radical a retroactive renegotiation of their earlier agreements. See, e.g., Kentucky Fried Chicken Corp. v. Collectramatic, Inc., 547 A.2d 245, 248 (N.H. 1988) ("[W]hen read in the context of the agreement's prospective language, it is clear that the contract's 'subject matter' consisted only of designated items yet to be sold, not of similar items already disposed of, and that the scope of the intended integration was similarly limited."). Thus, the run-of- the-mill integration clause Lucent aggrandizes as a "supersedure" clause was designed to do nothing more than prevent any unincorporated side agreements previously negotiated by the parties during the pre-contract negotiation stage from becoming enforceable provisions in their finalized post-1994 contracts.
Affirmed; costs to the appellee.