861 F.2d 719
 1988-2 Trade Cases 68,317
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Melford R. BURNS, Janice Burns, and Burns Spouting, Inc.
Plaintiffs-Appellants,
v.
REYNOLDS METALS COMPANY, Defendant-Appellee.
 No. 88-5029.
 United States Court of Appeals, Sixth Circuit.
 Nov. 1, 1988.
 
 Before KEITH, RALPH B. GUY, Jr. and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiffs appeal the district court's order granting summary judgment to defendant on their claims for breach of oral contract and violation of the Robinson-Patman Act. We affirm.
 
 I.
 
 2
 Because this case comes before the court as an appeal of a grant of summary judgment, "all inferences 'must be viewed in the light most favorable to the party opposing the motion.' " Ralph Shrader, Inc. v. Diamond International Corp., 833 F.2d 1210, 1213 (6th Cir.1987) (quoting Matsushita Electric Industrial Co. v. The Zenith Radio Corp., 475 U.S. 574 (1986)). In this case, therefore, the facts must be construed in favor of plaintiffs.
 
 
 3
 Beginning in the early 1970s in Pulaski County, Kentucky, plaintiffs Melford and Janice Burns owned and operated what is now Burns Spouting, Inc. Sometime in 1974, defendant Reynolds approached plaintiffs and asked whether they would be interested in selling Reynolds products in the Pulaski County area. After some negotiations between plaintiffs and Doug Lumpkin, a Reynolds salesman, and Ron Medley, the Branch Manager of defendant's Knoxville Service Center, an oral agreement was reached between the parties. Pursuant to this oral agreement, plaintiff would be the exclusive dealer in Reynolds products in Pulaski County. Moreover, defendant agreed that plaintiffs would be allowed to purchase Reynolds products from defendant at the lowest price available to any Reynolds distributor.
 
 
 4
 The parties operated under this oral distribution agreement from the middle of 1974 until September 15, 1980. At that time, plaintiffs had just incorporated their business. The defendant then insisted that the distribution agreement be in writing as a condition upon continuing to offer plaintiffs a sixty-day billing period instead of the normal thirty days. The parties therefore entered into a written distribution agreement on September 15, 1980. That agreement provided in relevant part:
 
 2. PRICES IN TERMS OF PAYMENT
 
 5
 (a) Prices shall be Manufacturer's prices in effect on the date of shipment. Current prices are listed in the attached Exhibit B which is part of this Agreement.
 
 
 6
 * * *
 
 
 7
 * * *
 
 3. TERRITORY
 
 8
 Distributor's territory is neither limited nor exclusive. Manufacturer reserves the right to sell and appoint others to sell Manufacturer's Products within any territory served by Distributor.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 The agreement also contained a merger clause which expressly stated that the written contract was the sole agreement between the parties. During the two-year period which followed the signing of the written agreement, the business relationship between the parties continued as it had prior to the signing of the written agreement.
 
 
 12
 The nature of the Reynolds distribution network throughout the period relevant to this litigation was described in an affidavit made by a Reynolds official as follows:
 
 
 13
 a. The products distributed and sold in Kentucky are produced by a Reynolds manufacturing plant in Ashville, Ohio.
 
 
 14
 b. Those products are distributed directly from the manufacturing plant to regional wholesale warehouses situated in strategic market locations throughout the region. Ever since 1974, the warehouses in the region at issue had been located in Cincinnati, Louisville, Knoxville, and Nashville. These regional wholesale warehouses are referred to as "Service Centers". From 1976 until 1981, the Louisville Service Center was a regional wholesale warehouse owned by Reynolds. In 1981, the Louisville Service Center was sold to a partnership consisting of Browne Linder and Richard Johnson, thereby becoming an independent regional wholesale warehouse. The divestiture of the Louisville Service Center in no way changed the marketing or distribution function of that service center. It merely became independently owned and operated. The Knoxville Service Center has always been owned by Reynolds. (Affidavit of Roger M. Scott, Jt.App. pp. 56-61.)
 
 
 15
 Beginning in 1977 or 1978, plaintiffs developed a business relationship with a retailer in Pulaski County named Bob Wood. Eventually, Wood became plaintiffs' best customer by a substantial margin, accounting for approximately twenty-five percent of plaintiffs' sales. However, in 1983, Wood became a distributor in Pulaski County competing with plaintiffs. Wood ceased doing business with plaintiffs and began purchasing Reynolds products directly from the now independently owned Louisville Service Center. He then sold these products in the Pulaski County area in direct competition with plaintiffs. Moreover, Wood was able to sell Reynolds products in the Pulaski County area at substantially lower prices than plaintiffs because defendant was selling to the Louisville Service Center at prices approximately fifteen percent below those charged to the Knoxville Service Center. The Louisville Service Center was then able to pass these savings to Wood. The Louisville market was apparently more competitive than either Knoxville or Pulaski County. Defendant therefore offered lower prices in Louisville in order to meet the lower prices offered there by competitors.
 
 
 16
 After attempting to convince defendant to stop Wood from competing with plaintiffs in Pulaski County, and to lower prices on Reynolds products sold to plaintiffs to match the prices offered to Wood, plaintiffs filed suit in Pulaski County Circuit Court for breach of contract. Defendant removed the case to the district court pursuant to 28 U.S.C. Sec. 1441 (1973) on the basis of diversity of citizenship. The defendant thereafter moved for summary judgment. Plaintiffs subsequently moved for leave to amend their complaint in order to add a claim under the Robinson-Patman Act, 15 U.S.C. Sec. 13 et seq. (1973). The district court granted plaintiffs' motion to amend over the objection of the defendant.
 
 
 17
 On August 15, 1986, the district court granted Reynolds' motion for summary judgment dismissing the plaintiffs' contract claim on the ground that the written agreement superseded any oral agreement between the parties. Although the district court's order did not discuss plaintiffs' claim under the Robinson-Patman Act, its order dismissed plaintiffs' entire complaint. Plaintiff thereafter filed a motion to vacate summary judgment, and the court issued an order amending its previous order to reflect that summary judgment was granted only on the question of breach of contract. Both parties then moved for summary judgment on the Robinson-Patman claim, and the district court subsequently entered an order granting defendant's motion and denying plaintiffs' motion. The district court based its holding on its finding that the Louisville Service Center was not on the same competitive level as plaintiffs. For this reason, the court concluded that the Robinson-Patman Act did not apply. This appeal followed.
 
 
 18
 Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Supreme Court has recently explained that "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). On appeal, this court must apply "the same test as used by the district court in reviewing a motion for summary judgment." Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987).
 
 II.
 
 19
 Plaintiffs contend that the distribution activities of Wood in Pulaski County and the sale of Reynolds products to the Louisville Service Center at prices substantially below those charged to plaintiffs both constitute breaches of the oral contract between the parties. This claim must be rejected because the 1980 contract, by its express terms, superseded any oral agreement between the parties. It has long been the rule in Kentucky that " '[w]here the parties put their engagement in writing all prior negotiations and agreements are merged in the instrument, and each is bound by its terms unless his signature is obtained by fraud or the contract be reformed on the ground of fraud or mutual mistake, or the contract is illegal.' " Childers & Venters, Inc. v. Sowards, 460 S.W.2d 343, 345 (Ky.1970) (quoting Hopkinsville Motor Co. v. Massie, 228 Ky. 569, 15 S.W.2d 423, 424 (1920)); see also Jones v. White Sulpher Springs Farm, Inc., 605 S.W.2d 42 (Ky.App.1980).
 
 
 20
 Plaintiffs argue that the parol evidence rule does not apply to the facts of this case because the written agreement was executed pursuant to a mutual mistake. They contend that both Melford Burns, who signed the contract for plaintiffs, and Doug Lumpkins, Reynolds' agent who discussed the agreement with Burns, mistakenly believed that the written agreement would not change the parties' prior business relationship in any way. This argument must be rejected for two reasons.
 
 
 21
 First, plaintiffs have produced no evidence indicating a mutual mistake between the parties. It is true that both plaintiffs and defendant's agent, Doug Lumpkin, apparently believed that the written contract would not alter the relationship between the parties prior to its execution. However, Lumpkin understood the prior relationship between the parties to be consistent with the description offered in the written contract. Lumpkin testified that he understood the oral agreement to be that Reynolds would not solicit any other business in Pulaski County as long as defendant was satisfied with the work done by plaintiffs. As to pricing, Lumpkin testified that he had promised plaintiffs only that he would give them the best prices available that he, as a salesman working out of the Knoxville Service Center, controlled. Thus, at most, any mistake made at the time of execution of the written contract was a unilateral one on the part of plaintiffs.
 
 
 22
 "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In this case, plaintiffs have made no showing that defendant made the same mistake they did--that it was a mutual mistake. Under Kentucky law, a contract may be rescinded for unilateral mistake only when the consequences of the mistake are so grave that enforcement of the contract would be unconscionable. Fields v. Cornett, 254 Ky. 35, 41, 70 S.W.2d 954, 957 (1934). Moreover, the mistaken party must have exercised ordinary diligence, and the rescission must not seriously prejudice the other party. Id. In this case, there can be no question that plaintiffs did not exercise ordinary diligence since the mistake could have been avoided by simply reading the contract. See Sears, Roebuck & Co. v. Lea, 198 F.2d 1012, 1015 (6th Cir.1952) in which the court stated that "one who signs a contract is presumed to know its contents, and ... if he has had an opportunity to read the contract which he signs he is bound by its provisions"; see also Amlung v. First National Lincoln Bank of Louisville, 411 S.W.2d 645 (Ky.1967).
 
 
 23
 Second, even if the mistake was not unilateral, plaintiffs may not maintain their mutual mistake claim because any mistake that was made was a mistake of law, not a mistake of fact. Under Kentucky law:
 
 
 24
 A mistake of law may be defined as an erroneous conclusion respecting the legal effect of known facts. It is laid down in general language in many cases that a mistake, in order that it may effect [sic] a contract must be a mistake of fact, and that a mere mistake of law may not effect [sic] the enforceability of an agreement.
 
 
 25
 Sadler v. Carpenter, 251 S.W.2d 840, 842 (Ky.1952) (emphasis added) (citations omitted). The "mistake" upon which plaintiffs rely concerns the legal effect of the written contract. Plaintiffs claim that they mistakenly believed that the written contract memorialized the business relationship between the parties as they then believed it existed. Thus, their mistake was one involving an interpretation of a contract. This is clearly a mistake of law. For this reason, plaintiffs may not argue that the written contract should be rescinded because of mutual mistake.
 
 
 26
 We hold that plaintiffs may not maintain a cause of action for breach of oral contract because any contract which existed between the parties was superseded by the written contract executed in September 1980.
 
 III.
 
 27
 Plaintiffs also claim that defendant's practice of offering prices to the Louisville Service Center lower than those offered to plaintiffs constitutes a violation of the Robinson-Patman Act. The Act provides:
 
 
 28
 It shall be unlawful for any person engaged in commerce ... to discriminate in price between different purchasers of commodities of like grade and quality ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.
 
 
 29
 15 U.S.C. Sec. 13(a) (1973).
 
 
 30
 This claim too must fail because, as the district court held, plaintiffs were on a different competitive level than the Louisville Service Center. A prima facie violation of Sec. 13(a) can be shown by "proof of a substantial price discrimination between competing purchasers over time." Falls City Industries, Inc. v. Vanco Beverage, Inc., 460 U.S. 428, 435 (1982); see also FTC v. Morton Salt Co., 334 U.S. 37, 46 (1948). Although the Sixth Circuit has never specifically addressed this point, other circuits have held that in order to establish a prima facie case, a plaintiff must show that "a seller made a sale to two different buyers on the same functional level of competition, charging different prices to each." Eximco, Inc. v. Trane Co., 737 F.2d 505, 515 (5th Cir.1984); FLM Collision Parts, Inc. v. Ford Motor Co., 543 F.2d 1019, 1024 (2d Cir.1976), cert. denied, 429 U.S. 1097 (1977). The Supreme Court recognized this principle explicitly in its interpretation of Sec. 13(d) of the Act, a provision similar to Sec. 13(a), holding that it "reaches only discrimination between customers competing for resales at the same functional level and, therefore, does not mandate proportional equality between [a retailer] and the two wholesalers." FTC v. Meyer, 390 U.S. 341, 349 (1968).
 
 
 31
 The uncontradicted evidence in this case establishes that the Louisville Service Center was on the same functional level of distribution as the Knoxville Service Center. This was true both before and after defendant sold the Louisville Service Center to independent operators. The owner of the Louisville Service Center, Richard Johnson, testified that dealers in the position of plaintiffs within the Reynolds' distribution network were considered "mini-distributors" or "sub-distributors." These mini-distributors would purchase from wholesale distributors such as the Knoxville Service Center or the Louisville Service Center and then resell to local retail dealers or directly to the public. The fact that plaintiffs bought directly from Reynolds' wholly-owned Knoxville Service Center does not place plaintiffs on the same level of distribution as the Louisville Service Center simply because the Louisville Service Center also bought directly from Reynolds. The two performed completely different functions within the Reynolds' distribution network.
 
 
 32
 Plaintiffs rely heavily on the testimony of Doug Lumpkin with regard to plaintiffs' position within the Reynolds distribution network:
 
 
 33
 Q. One last question: Isn't it true that after the Louisville Service Center was sold in 1981 that it became a distributor just exactly like Mel Burns did; that it bought products from Reynolds for distribution to other people and it was not, in fact, associated with Reynolds in any way.
 
 
 34
 A. To the best of my knowledge, that is correct.
 
 
 35
 Q. So, it would have been on even competition or it would have been one of Mr. Burns' competitors?
 
 
 36
 A. Yes, it was a competitor of Mr. Burns. As far as I know, they were a distributor just like he was, but of larger magnitude.
 
 
 37
 Plaintiffs' reliance on this passage is misplaced. The central point which Lumpkins made is that plaintiffs were similar to the Louisville Service Center in that both were independent of Reynolds. As noted above, this does not mean they were on the same level of competition for purposes of the Robinson-Patman Act. Lumpkins made this point when he observed that the Louisville Service Center was "of a larger magnitude" than plaintiffs.
 
 
 38
 We hold that because plaintiffs were on a different competitive level than the Louisville Service Center their claim under the Robinson-Patman Act fails.
 
 
 39
 The judgment of the district court is AFFIRMED.